## JUDD v. UNITED STATES.

### No. 10780.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 29, 1951.

Decided May 19, 1951.

Clark, Circuit Judge, dissented.

Joseph D. Di Leo, Washington, D. C., for appellant.

Jerome Powell, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty., and Harold H. Bacon and Joseph M. Howard, Asst. U. S. Attys., all of Washington, D. C., were on the brief, for appellee.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This case presents the question whether the trial court was correct in denying a motion to suppress certain evidence on the ground that it was procured through a search and seizure which violated the Fourth Amendment.

Appellant Robert Judd was charged with the crimes of housebreaking and grand larceny, D.C.Code (1940 ed.) §§ 22–1801, 22–2201. He pleaded not guilty and after trial by jury was convicted on both counts. It is from the judgment of conviction that he appeals.

On the night of March 23–24, 1950, the office of the Standard Transfer & Storage Company, in Washington, D. C., was broken into and some $2,600 stolen in money and travellers' checks. The next day the police received information from someone identified only as "Harvey" that he had recently overheard his neighbor, Ernest White, discussing various housebreaking jobs with several people, including appellant Judd. From this they concluded that the Standard Transfer larceny might be involved. Accordingly, police officers proceeded to the house where Ernest White lived and secreted themselves in a room adjoining White's. They heard White enter with another unidentified person and dis-

cuss leaving town for Philadelphia. After the person with White, still unidentified, had left, the police entered White's room, placed him under arrest, and commenced a search, locating some of the stolen checks. Appellant Judd was not in the room at that time and there was no evidence that he·had been present earlier in the evening, or that he was the person who had come in with White. Shortly after the arrest of White, Judd entered the apartment and was immediately arrested. He denied any knowledge of the crime.

At the trial the sole affirmative evidence linking Judd with the crime was the testimony of a laboratory technician, that the print of a shoe taken from Judd's apartment matched a shoeprint found on a carton inside the Standard Transfer & Storage Company building, under or near a window which apparently had been entered for purposes of the theft. The shoe and a photographic copy of the impression on the box carton were introduced in evidence. It is Judd's contention that the shoe was captured by an unconstitutional search and seizure and should not have been admitted in evidence. If he is correct in that contention, the conviction, of course, cannot stand.

From the testimony on the motion to suppress, the following picture may be drawn: The appellant was arrested without a warrant at 11 o'clock at night, when he entered the premises of White. He was taken to jail and "booked on an open charge." He was not then formally committed. While held in custody for purposes of investigation, he was interrogated ·for several hours by police officers concerning general criminal activity, possible possession of burglar's tools at his home, and whether he had committed the Standard Transfer burglary. He was also asked whether he had certain items of clothing at home, including shoes. At approximately 2:00 A.M., in the custody of four police officers, and while handcuffed, he was tak-

en to his own home, which was in a different part of town. The apartment was then searched and the shoes found. Appellant testified that all this was against his will and without any consent. A police officer testified that while he and another officer were interrogating Judd at the jail concerning burglar's tools and his clothing and shoes, they asked him whether "he minded us going over to his room and taking a look, and he said no. * * * We asked him if he would go over and he said yes. * * * He didn't give us actual consent to search it. He gave us consent to go. in there. I told him I was looking for a pair of shoes and he said it was all right to go over there * * *." The other officer testified: "We questioned him as to whether he had any tools that could be used in ripping safes. * * * So, he said we would go out to ·his place and see, if we believed he had any of these things there. * * * I told him where we were going, and he was well aware of the fact that we were going to his home. He said he had nothing to conceal or hide out there, and it was perfectly all right for us to go out there."

This is the basis of the Government's case. The Government, admitting that no warrant had been obtained, contends that the appellant voluntarily consented to the search and seizure, thus making the issuance of a warrant unnecessary. There is no claim that consent was given when the officers reached the apartment, reliance being placed solely on the statements made by Judd while in jail. The Government argues that the validity of the arrest, never having been formally challenged, is not before us and, in any event, is irrelevant to the issue of consent.

 Searches and seizures made without a proper warrant are generally to be regarded as unreasonable and violative of the Fourth Amendment.[1] True, the obtaining of the warrant may on occasion be waived by the individual; he may give his

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. Amend. IV.

consent to the search and seizure. But such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; United States v. Kelih, D.C.S.D.Ill.1921, 272 F. 484. The Government must show a consent that is "unequivocal and specific" (Karwicki v. United States, 4 Cir., 55 F.2d 225, 226), "freely and intelligently given." Kovach v. United States, 6 Cir., 53 F.2d 639. Thus "invitations" to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. United States v. Marquette, D.C.N.D.Cal.1920, 271 F. 120. A like view has been taken where an officer displays his badge and declares that he has come to make a search (United States v. Slusser, D.C.S.D.Ohio 1921, 270 F. 818), even where the householder replies "All right." United States v. Marra, D.C.W.D.N.Y.1930, 40 F.2d 271. A finding of consent in such circumstances has been held to be "unfounded in reason". Herter v. United States, 9 Cir., 27 F.2d 521. Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent.

This burden on the Government is particularly heavy in cases where the individual is under arrest. Non-resistance to the orders or suggestions of the police is not infrequent in such a situation; true consent, free of fear or pressure, is not so readily to be found. United States v. Novero, D.C., 58 F.Supp. 275; United States v. McCunn, D.C.S.D.N.Y.1930, 40 F.2d 295. In fact, the circumstances of the defendant's plight may be such as to make any claim of actual consent "not in accordance with human experience", and explainable only on the basis of "physical or moral compulsion". Ray v. United States, 5 Cir., 84 F. 2d 654, 656.

In the case at bar, do the circumstances justify the finding of consent? As we have noted, the appellant was arrested late at night without a warrant, booked on an open charge for "investigation,"[2] questioned for several hours by various police officers, then taken to his home some distance away, while handcuffed, and in custody of four officers. His statements while in jail, which are relied on as consent, may be summarized as: I have nothing to hide, you can go there and see for yourself. Conceivably, that is the calm statement of an innocent man; conceivably, again, it is but the false bravado of the small-time criminal. But, however it be characterized, it hardly establishes willing agreement that the officers search the household without first procuring a warrant.[3] Comparable statements have been held insufficient where the victim of the search was safely in his home,[4] his place of business,[5] or in his automobile.[6] Surely they acquire no more force when procured under the circumstances here pres-

---

2. While not controlling in this decision, we may note that Judd was not charged with housebreaking or any other offense until several hours after his arrest (and after the search); nor does it appear with certainty from the record before us that he was promptly taken before a committing magistrate, as required by Rule 5 (a) of the Federal Rules of Criminal Procedure. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100.

3. For example, Officer Friel testified: "We asked him [Judd] if he would go over [to his home] and he said yes." It seems obvious that there was not much else Judd could say under the circumstances. Similarly, where Officer Friel testified: "I asked him if he minded us going over to his room and taking a look, and he said no."

4. Herter v. United States, supra; Farris v. United States, 9 Cir., 24 F.2d 639; United States v. Marra, supra; Helfer v. State, 84 Okl.Cr. 304, 181 P.2d 862; Byrd v. State, 161 Tenn. 306, 30 S.W.2d 273.

5. United States v. McCunn, supra.

6. Graham v. State, Okl.Cr.App., 184 P.2d 984; Edwards v. State, 83 Okl.Cr. 340, 177 P.2d 143.

ent.[7] Further, the testimony of one officer was that Judd "didn't give us actual consent to search it. He gave us consent to go in there." Before a court holds that a defendant has waived his protection under the Fourth Amendment, "there must be convincing evidence to that effect." Nueslein v. District of Columbia, 73 App. D.C. 85, 89, 115 F.2d 690, 694. Here, the officers themselves do not appear completely convinced.

The relative credibility of the witnesses is not the central issue in this case.[8] The real issue is whether the evidence offered by the Government, taken at full value, meets the required standard. We hold that it does not; that there has not been a sufficient showing of true consent, free of duress and coercion. Standards of this sort must be maintained and enforced by the trial and appellate courts.[9] If they are not, the guarantees of the Bill of Rights can quickly disappear through tacit nullification. We must hold that there was no consent and that the search and seizure were not permissible. Accordingly, the evidence was inadmissible and the motion to suppress should have been granted. The conviction cannot stand.

Since we reverse, we need not comment on appellant's other allegation of error, namely, that there was insufficient evidence to support the conviction and that secondary evidence was improperly admitted.

Reversed and remanded.

CLARK, Circuit Judge, dissents.

He was before this Court on a robbery charge on which he was acquitted for insufficiency of evidence, but he certainly has not been a good law-abiding citizen.

"He certainly is not entitled to ask the Court to accept his word as against officers of the law.

\* \* \* \* \* \*

"The motion to suppress is denied."

7. Gibson v. United States, 80 U.S.App.D. C. 81, 149 F.2d 381, certiorari denied sub nom. O'Kelley v. United States, 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429, on which the Government relies, is not in point. The court there merely held that evidence which is volunteered by a person while under illegal arrest, where he admits that he acted on a completely voluntary basis, is not inadmissible.

8. In this connection, the judge who heard the motion to suppress concluded his remarks by saying:

"The two police officers impressed the Court as gentlemen of probity. The defendant is unworthy of belief, because of his past conflicts with the law.

"He was placed on probation once for a serious offense; was arrested at a subsequent time for violation of probation.

9. Craig v. Harney, 331 U.S. 367, 373, 67 S.Ct. 1249, 91 L.Ed. 1546; Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L. Ed. 224, Feiner v. New York, 340 U.S. 315, 316, 322–323, 71 S.Ct. 303; Watts v. Indiana, 338 U.S. 49, 51–52, 69 S.Ct. 1347, 93 L.Ed. 1801. See also, Frankfurter, J., dissenting, in Davis v. United States, 328 U.S. 582, 600, 66 S.Ct. 1256, 90 L.Ed. 1453.