**UNITED STATES**

v.

**Harold B. DORMAN.**

**Crim. No. 191–67.**

United States District Court
District of Columbia.

July 19, 1967.

Robert K. Webster, Asst. U. S. Atty., Washington, D. C., for the United States.

Charles S. Iversen, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This cause came on to be heard on defendant Dorman's motion to suppress certain evidence, some of it seized from him at the time of his arrest, some of it taken from his automobile which was searched at the time of his arrest, some of it taken at the scene of the crime, and lastly, some of it taken during a search of the apartment where Dorman lived with his mother, which search was made while Dorman was not at home, without a search warrant, about four hours after the robbery with which defendants in this case are charged.

The items taken from Dorman's person and from his car at the time of his arrest were validly seized and will not be ordered suppressed. The police had ample probable cause to connect defendant Dorman with the robbery of Carl's Mens Shop, and the search pursuant to his lawful arrest was well within the scope of decided case law. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925).

Two items belonging to Dorman were found at the scene of the crime. The first, a pair of black trousers he abandoned in a dressing room, will not be ordered suppressed. The second was a Federal probation report form bearing Dorman's name and home address. In support of his motion to suppress the probation report, defendant relies on the case of Barnes v. United States, 124 U.S. App.D.C. 318, 365 F.2d 509 (1966). In Barnes, the Government introduced police "mug" shots of the defendant showing front and profile views of his face. Even though identifying words and num-bers at the bottom and back of the exhibit had been taped over, the Court of Appeals held that the exhibit prejudiced the defendant because it indicated to the jury that he had a prior criminal record. Since Barnes did not take the stand to testify in his own defense, the Government by other means could not have revealed that he had a prior record. The decision was reversed and the case remanded for a new trial. The Court's per curiam opinion was explained, and perhaps qualified somewhat, by Judge Leventhal's separate opinion, in which he stated:

"Some courts have held that such pictures may be introduced into evidence where the nature of the photograph is effectively kept from the jury's knowledge. Thus, in a recent Texas decision [Huerta v. State, 390 S. W.2d 770, 772 (Tex.Crim.App.1965)] the court upheld the admission of a police picture of the defendant where 'all identification marks were removed, and, as far as the jury were able to determine, it might have been taken in a penny arcade.' No such reasoning can justify Government Exhibit 3 in this case. The double-shot picture, with front and profile shots alongside each other, is so familiar, from 'wanted' posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic. The rudimentary tape cover placed over the prison numbers on the photograph, and over the notations on the reverse side, neither disguised the nature of the picture, nor avoided the prejudice. If anything, by emphasizing that something was being hidden, the steps taken here to disguise the nature of the picture may well have heightened the importance of the picture and the prejudice in the minds of the jury."

Adopting the foregoing reasoning, it would appear that the total effect of the probation report at issue in this case, assuming it were to be disguised, would

be critical in determining whether it should be shown to the jury. This determination can be made only at the trial by the trial judge, if the Government decides to offer the report in evidence as an exhibit at that time. It is clear that if the witnesses were allowed to testify to the fact that the paper found was a probation report, the defendant would be severely prejudiced. However, as the Court stated at the time the motion was argued, there appears to be no reason for excluding testimony by police officers to the effect that they found at the scene of the crime a paper identifying defendant by name and address, and that this information led to defendant's arrest. It is difficult to see what additional value the paper would have as an exhibit were it possible to disguise it sufficiently to present it to the jury, but that determination will be left to the trial judge.

■ With respect to items seized from defendant's apartment, the motion to suppress poses greater problems. About four hours after the armed robbery of Carl's Mens Shop—a robbery accompanied by physical harm to the proprietor of the shop—a number of police detectives, most of them in plain clothes, went to Dorman's apartment in search of him, with the purpose of placing him under arrest for the robbery. Two of the detectives were armed with shotguns. They knocked at the apartment door, and Dorman's mother, who had been in bed, got up to ask who was there. The police stated their purpose and Mrs. Dorman opened the door. She told them that Harold had been there, but that he had left some minutes earlier, and suggested that if they did not believe her, they could come in and look for themselves. At that moment, the police heard a sound inside the apartment, and, in the belief that Dorman was hiding within, they pushed past Mrs. Dorman and entered the apartment. Actually, the sound had

been made by a Mr. Allen, a friend of Mrs. Dorman who evidently shared the apartment with her and her son. The police saw Allen as soon as they entered. Nonetheless, they continued to search the apartment. One of the places they looked, as a possible hiding place, was a walk-in closet in the front room of the apartment. They did not find Dorman, but they did observe a dark suit, with unhemmed cuffs and a label identifying it as from Carl's Mens Shop, hanging right inside the closet door. The suit matched the description of one tried on by the robber prior to the robbery, and worn by him from the shop. The unhemmed trousers immediately aroused the suspicion of the police officer who examined the closet, and he seized the suit. In addition, the police officers rummaged about the apartment and seized other items which have since been returned to the defendant and hence are no longer at issue.[1]

The Government maintains that the entry and search of Dorman's apartment can be justified on the theory of exigent circumstances or, alternatively, on the theory that Mrs. Dorman consented to the entry and search.

■ The consent theory can be disposed of quickly, for no valid consent can be found when police armed with shotguns present themselves at the door of a house or apartment late at night and state that they want to arrest the householder's son. As our Court of Appeals said in Judd v. United States, 89 U.S. App.D.C. 64, 190 F.2d 649 (1951), "such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied." "The Government must show a consent that is 'unequivocal and specific' * * * 'freely and intelligently given.' * * * Thus 'invitations' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be

1. On the following day, Mrs. Dorman voluntarily turned over to the police a gun and some ammunition which were also in the apartment, and since these items were not forcibly taken from the apartment, the Court will deny the motion to suppress them.

considered as invitations secured by force. * * * Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent." 89 U.S.App.D.C. at 65–66, 190 F.2d at 651. Here it is plain that the Government makes self-contradictory arguments with respect to the element of consent. On the one hand, it contends that the police were justified in concluding that Mrs. Dorman would be hiding her son within, and on the other hand, that she consented to their entry and search. Other cases which lend support to the defendant's argument that true consent was lacking here are Waldron v. United States, 95 U.S.App.D.C. 66, 219 F.2d 37 (1955); Nelson v. United States, 93 U.S.App.D.C. 14, 208 F.2d 505 (1953); and Gibson v. United States, 80 U.S.App.D.C. 81, 149 F.2d 381 (1945). The cases upholding searches based on valid consent are clearly distinguishable: Fredricksen v. United States, 105 U.S. App.D.C. 262, 266 F.2d 463 (1959); Woodard v. United States, 102 U.S.App. D.C. 393, 254 F.2d 312 (1958); and United States v. Rees, 193 F.Supp. 849 (D.Md.1961).

■ As a counterbalance to the Government's theory that the entry and search were justified on the ground of exigent circumstances, the defendant cites Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925), for the proposition that a search of a home, not made in connection with a lawful arrest, is unlawful unless made pursuant to a valid search warrant. While Agnello no doubt is still the law for the usual case, the Supreme Court, in its recent decision in Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (May 29, 1967) for the first time explicitly decided that the police could forcibly enter a home under "exigent circumstances." There, hot pursuit of an armed felon and a search, both for the felon and for weapons, without a warrant and not pursuant to an arrest were upheld.

In Hayden, the felon not only was at his home, but he was seen to enter it by cab drivers who had followed him from the scene of the crime just moments before.

In another case, decided also last term, the Supreme Court refused to consider what possible limits might be inherent in the "exigent circumstances" doctrine. In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (June 12, 1967), the police entered defendant's apartment hours after he was involved in a bank robbery, without a warrant, and knowing that he was no longer in the apartment. The entry was upheld by the California Supreme Court on the ground that the circumstances were "exigent" and that the entry was made primarily for the purpose of finding a felon or a hiding place for a felon. However, according to the facts developed in the dissenting opinion of Mr. Justice Douglas, it appears that the police conducted a rather general search while they were inside the apartment, and that among the items seized were some photographs of the defendant and rolls of coins presumably taken in the robbery of the bank. The fact that the Supreme Court remanded the case on other grounds leaves it unclear as to what its decision might have been on the Fourth Amendment issue had it undertaken to decide it.

The present case bears a marked likeness to Gilbert with respect to the fact that the defendant was not at home when the search occurred, that the search was conducted some hours after the offense charged, that the police had every reason to believe the defendant was armed and dangerous, and that the search was conducted for the ostensible reason of arresting a felon but in fact only turned up evidence linking the defendant to the crime. In one respect, this case is stronger for the Government in that the hour of the robbery and the hour of the search were such that it would have been difficult if not impossible for the police to obtain a warrant to arrest defendant or to search his house until the next morning.

■ Recognizing that there is still some doubt as to how the Supreme Court ultimately will resolve cases of this nature, it appears to this Court that the entry, search and seizure in this case should be upheld as a reasonable exercise of police authority, following the reasoning of Warden v. Hayden, supra. Once the police found papers identifying defendant Dorman at the scene of the crime, and showing his address, the police had probable cause to believe that he would have gone home following the robbery, and that he might still be there. They knew he was armed and that he was not unwilling to use force and violence to accomplish his aims. They had a duty to try to apprehend him as quickly as possible. Finally, it was not unreasonable for them to suppose that the defendant's own mother would lie in an attempt to shield her son from arrest. Finding that the entry was lawful, the Court sustains the seizure of the suit as the fruit of the crime with which Dorman is charged.

Accordingly, the motion to suppress will be denied. The parties shall prepare an appropriate order.