**Warren H. BYRD, Petitioner-Appellant,**

**v.**

**Ward LANE, Warden of Indiana State Prison and David P. Morton, Superintendent of Dr. Norman B. Beatty Memorial Hospital, Respondents-Appellees.**

No. 16535.

United States Court of Appeals
Seventh Circuit.

July 25, 1968.

Ferdinand Samper, Forrest Bowman, Jr., Indianapolis, Ind., for petitioner-appellant.

John J. Dillon, John F. Davis, Indianapolis, Ind., for respondents-appellees.

Before MAJOR, Senior Circuit Judge, KILEY and FAIRCHILD, Circuit Judges.

MAJOR, Senior Circuit Judge.

Petitioner is incarcerated in a State prison located in the Northern District of Indiana, pursuant to a commitment of the Henry Circuit Court of that State. He was charged with and found guilty of murdering his wife by the administration of arsenic poison. He was arrested March 15, 1961, and the trial in the State court commenced June 15, 1961, resulting in a verdict on June 19, 1961, the same date that the Supreme Court of the United States announced its decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The judgment of conviction was affirmed by the Indiana Supreme Court, Byrd v. State, 243 Ind. 452, 185 N.E.2d 422 (1962).

The case before us was initiated by a twenty-page petition for a writ of habeas corpus, complaining that he was detained by the State of Indiana in violation of his rights under the Constitution of the United States. A supplemental petition was filed alleging the exhaustion of all State court remedies. We see no point in relating or discussing the proceedings in the State court by which such remedies were alleged to have been exhausted for the reason that respondents take no issue in this respect; in fact, they tacitly concede that such remedies were exhausted. Neither do we need to discuss Mapp v. Ohio because concededly it is applicable insofar as pertinent to the instant situation.

The petition is unique in that it was predicated solely upon the premise that the two attorneys who represented petitioner in his State court trial were incompetent and that the "restraint and detention of petitioner is in violation of his constitutional rights as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and specifically his constitutional rights to counsel, due process of law and equal protection of the laws, all by reason of the following facts: * * *." Then follow some fifteen pages of allegations, all directed to such premise.

Following a lengthy hearing devoted in the main to petitioner's contention that his Sixth Amendment rights had been violated, Judge Robert Grant rendered a memorandum opinion in which he noted that the competency of one of the attorneys was conceded by petitioner and found on the proof that the other attorney was also competent.

Among numberous allegations contained in the petition was that in paragraph (j):

"That at the trial of the cause herein the State of Indiana introduced in evidence without objection State's Exhibit #1 which was a bottle labeled poison. That State's witness Eugene Short testified that he found said bottle behind the furnace of the Byrd home during a search he made of the Byrd home on March 16, 1961. That

at the same time and place he found ten or twelve similar bottles that were dirty; that Exhibit #1 was not covered with dust or soot."

The petition alleged that this evidence was obtained as a result of an illegal search of petitioner's home, admitted without objection on the part of petitioner's counsel, and was in violation of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. In response to this allegation, the court in its memorandum opinion stated:

"Finally, petitioner argues that evidence discovered upon the search of his home by police and admitted or referred to during the trial was not admissible because obtained as a result of an illegal search. (Petition at 8) At the hearing held in this Court May 12, 1967, Respondent's Exhibit A was admitted, being petitioner's consent to have his house and residence searched" by Warren Davis, Henry County Sheriff, and other officers.

It further found:

"All testified that Byrd signed it in their presence and that it was done voluntarily. All that Byrd could testify to was that he did not remember signing such a form. In light of all the testimony given at that hearing, the Court can only conclude that the evidence obtained as a result of the search was properly admissible."

By its order entered August 10, 1967, the court denied the petition for writ of habeas corpus, from which order petitioner appeals.

The sole issue before this court is whether the search of petitioner's home, resulting in the seizure of a bottle of poison, violated his constitutional rights. The resolution of this issue is dependent upon whether petitioner voluntarily consented to such search or whether it was made pursuant to a lawful arrest.

■ It has been often held that whether a consent to search is voluntary is a question for the trier of facts and its finding, if substantially supported, will not be disturbed on review. Drummond v. United States, 8 Cir., 350 F.2d 983, 988; United States v. Thompson, 2 Cir., 356 F.2d 216, 220, cert. den. 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675, and Ruud v. United States, 9 Cir., 347 F.2d 321, 322.

We deem it unnecessary to recite in detail the testimony of Sheriff Davis and the three other officers (not five or six, as suggested by petitioner) as to the circumstances concerning petitioner's arrest and his consent to the search of his home. Davis testified that he and the other officers went to petitioner's home at about 4:30 p. m. March 15, 1961, and found him sitting in a car with another man. Petitioner and Davis went into petitioner's house where his son, daughter, brother and sister-in-law were present. Either petitioner or Davis suggested that they step into the barber shop which was in the front room of the house. When there, Davis advised petitioner that he had a warrant charging him with the murder of his wife, which he gave to petitioner. Davis asked petitioner if they could have permission to search his house, which petitioner freely gave, stating, "I have nothing to hide. Sure you can search. I have nothing to hide."

At the same time, Davis informed petitioner that if he did not sign the written consent which Davis produced authorizing such search, he would be forced to obtain a search warrant, and petitioner signed it. Davis testified, corroborated by the testimony of the other officers, that no promise or threat was made and no form of coercion or intimidation was employed to obtain such consent. Petitioner testifying on his own behalf stated that no one asked his permission to search his premises, that they (referring to the

officers) "just charged on in the house," and that nothing was presented to him for his signature. After being shown the written consent, he testified that he did not remember being presented with the paper at that time, although he admitted the signature appeared to be his.

We agree with the District Court that petitioner's consent to search his home was given freely and voluntarily, without duress, promise or coercion; in fact, we think the testimony unmistakably discloses that such consent was given both orally and in writing.

Petitioner cites a number of cases in support of his contention that under the circumstances any consent obtained to search was as a matter of law involuntary. We defer a discussion of these cases for the reason that many of them consider the legality of a search made either by voluntary consent or incident to a lawful arrest.

This brings us to the contention relied upon by respondents that the search in question was proper because made incident to a lawful arrest. Unfortunately this issue was not developed in the trial court as it might have been. Neither petitioner on brief here nor the court in its memorandum opinion makes any mention of it. We suspect that this situation is due to the fact, already noted, that petitioner's able counsel in the instant matter devoted their main effort in an attempt to prove incompetency of petitioner's trial counsel, and that the issue regarding the search was merely incidental.

Petitioner was arrested in his own home, in the execution of a lawful warrant, at about 4:30 p. m. March 15, 1961. Petitioner has engendered some confusion as to whether the search was made following the arrest or the next day by alleging in his petition and repeating in his statement of facts, "That State's witness Eugene Short testified that he found said bottle behind the furnace of the Byrd home during a search

he made of the Byrd home on March 16, 1961." This allegation was denied in respondents' response to the petition. Respondents on brief state, "In the case at bar the Appellant was arrested with a lawful warrant and the search was contemporaneous in time and space with the arrest." Petitioner does not challenge this statement either directly or indirectly.

It appears to us that petitioner on brief abandons any contention that the search was not made immediately following his arrest. In his argument he states, "The evidence shows that at the time of the search four, five or six police officers went into the home of the petitioner in the company of the Sheriff, who had with him a warrant for the arrest of the petitioner on a charge of first degree murder." Referring to the written consent which was signed by petitioner at the time of his arrest, the brief states, "The petitioner agreed to sign the document, and stated that he had nothing to hide. The document was signed by the petitioner, and the search was made." It is not reasonable to think that if there was any question as to when the search was made with reference to the time of arrest, petitioner would have made inquiry of the officers who made the arrest, conducted the search and testified in the instant matter. The only testimony on this point was elicited by the court from Davis, as follows:

"The Court: Then the search that was made was made at that time, after the arrest and after the signing? The search was then conducted; is that what I am to understand?

"The Witness: We did conduct a search, yes, after the arrest, yes.

"The Court: Thereafter?

"The Witness: That's right."

We need not dwell upon cases cited by petitioner which clearly reveal that the rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, is applicable in the instant situation where the judg-

ment of conviction in the State court was entered subsequent to that of the court in Mapp. As was stated in Ker et ux. v. State of California, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726:

"We specifically held in Mapp that this constitutional prohibition is enforceable against the States through the Fourteenth Amendment. This means, as we said in Mapp, that the Fourth Amendment 'is enforceable against them [the states] by the same sanction of exclusion as is used against the Federal Government,' by the application of the same constitutional standard prohibiting 'unreasonable searches and seizures.'"

*Ker* supports the point that a valid search may be made incident to a lawful arrest. In that case the defendant's room was searched without either an arrest or search warrant. The court stated (page 41, 83 S.Ct. page 1634):

"Having held the petitioners' arrests lawful, it remains only to consider whether the search which produced the evidence leading to their convictions was lawful as incident to those arrests. The doctrine that a search without warrant may be lawfully conducted if incident to a lawful arrest has long been recognized as consistent with the Fourth Amendment's protection against unreasonable searches and seizures." (Citing cases.)

The court affirmed the conviction in that case on the premise that the search and seizure was incident to a lawful arrest. The rationale of *Ker* is pertinent to the instant situation where the search and seizure followed petitioner's arrest on an admittedly lawful warrant.

Petitioner contends that the consent to search his home was not voluntary because he was not at the time apprised of his Fourth Amendment rights. Two cases are strongly relied upon in support of this contention. United States v. Nikrasch, 7 Cir., 367 F.2d 740, a recent decision of this court, and Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d

649. Both of these cases are distinguishable upon the marked difference in the factual situation. In *Judd*, for instance, the defendant was arrested without a warrant at 11 p. m., held in jail on an open charge and interrogated for several hours by police officers concerning general criminal activity. At 2 a. m., in the custody of four police officers and while handcuffed, he was taken to his own home, which was searched and incriminating evidence found. Defendant testified that all of this was against his will and without any consent; in fact, one of the police officers testified that the defendant "didn't give us actual consent to search it." Under these circumstances the court held that the consent for the search was not voluntary, and reversed the conviction. Thus, the facts in *Judd* are a far cry from those here.

In *Nikrasch*, this court reversed a conviction on the ground that evidence at the trial was obtained by an unreasonable search and seizure. Petitioner relies particularly upon the statement (367 F.2d page 744):

"On this appeal the Government has not argued that defendant waived the protection accorded by the Fourth Amendment by 'consenting' to the 9:00 A.M. car search at the police station and the subsequent search at the Mancuso Chevrolet agency. Since the arrested defendant was then in custody in the Skokie cell-block and had not been apprised of his Fourth Amendment rights, the trial court correctly observed that no true consent had been given to Detective Reiter."

Respondents urge us to "re-examine and re-evaluate" our holding in *Nikrasch* on the point that no true consent can be given absent an apprisement of petitioner's Fourth Amendment rights. We note that the First Circuit in Gorman v. United States, 1 Cir., 380 F.2d 158, stated:

"We cannot accept the recently suggested rule that a specific warning of fourth amendment rights is necessary

to validate a warrantless search after the suspect has been arrested." (Citing *Nikrasch* and other cases.)

While we think our statement in *Nikrasch* of dubious propriety, we are not disposed to reject it because it was given application to a factual situation at great variance with that here. In that case, the defendant and companions were arrested without a warrant at about 1 a. m. on a disorderly conduct charge, and were committed to jail. At the time of the arrest, a search of defendant's car was made with the consent of one of the parties. Some eight hours after they were lodged in jail, the officers searched the car while it was at the police station and again after it was removed to an automobile agency. As to the first search this court stated (367 F.2d page 742):

"The District Court found that the 1957 Chevrolet was seized at the filling station pursuant to a lawful arrest of defendant and his companions, that the Village ordinance was constitutional, that the officers had probable cause for making the arrests thereunder, and that the search and seizure were incidental to the arrests."

This court evidently approved of the search made at the time of the arrest. We stated (page 743):

"Even if the police had the right to search the car at the gas station, this does not decide the question of the reasonableness of the 9:00 A.M. search at the police station and subsequently at Mancuso's Chevrolet agency."

The subsequent searches, purportedly made with defendant's consent, were held to be in violation of the defendant's constitutional rights.

It is also pertinent to observe that in *Nikrasch* we relied heavily upon Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, which reversed a judgment of conviction upon the ground that the search was not made incident to a lawful arrest. In *Preston*, the search of defendant's car was made by the police department some eight hours after defendant was committed to jail. The court recognized the propriety of a search made incident to a valid arrest but held (page 367, 84 S.Ct. page 883):

"Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."

In the instant case petitioner was arrested in his own home on a legal arrest warrant which he was permitted to read, charging him with the crime of murdering his wife with poison. There is substantial evidence in support of the finding that this consent to search was voluntarily given. In any event, the search was made as an incident to a lawful arrest, and the bottle of poison seized was relevant to the crime with which petitioner was charged.

The order appealed from is

Affirmed.

FAIRCHILD, Circuit Judge (concurring).

I concur on the ground that the petitioner voluntarily consented to the search.

KILEY, Circuit Judge (dissenting).

I dissent. The issues which this court must resolve in deciding this case are whether petitioner voluntarily consented to the search of his home which produced a bottle of poison introduced as evidence against him, or whether the search, if not consented to, was nevertheless justifiable as incidental to petitioner's arrest. In my view the record now before us does not contain sufficient information to enable us to make an intelligent determination of these issues.

The theory on which petitioner relied in his brief in this court is that the consent to search his house, which he signed on March 15, was invalid because it was signed, without proper warning, while petitioner was under arrest. During the oral argument the prosecuting attorney stated that the record of petitioner's state trial showed that the

search of petitioner's home which yielded the bottle of poison was made on March 16, and not on March 15 when the consent had been signed.

A review of the trial court record shows that the police officer who found the bottle of poison testified unequivocally that the bottle was found on March 16 and the bottle itself was labeled with the policeman's initials and the date "3–16–61."

In the light of the strong indication in the record that the search was made on March 16, we should not ignore the significance of this pertinent information for the determination of the questions before us.

The questions of law that must be considered by us are: was the consent to a search of petitioner's home signed on March 15 an effective waiver of petitioner's Fourth Amendment rights with regard to the March 16 search; and was the search made on March 16 incidental to the arrest on March 15.

In order for a search to be justifiable as incident to an arrest it must be contemporaneous in time and place with the arrest. If the search in this case was made one day after the arrest, it was not made contemporaneously with the arrest and was therefore not incidental to the arrest. Preston v. United States, 376 U.S. 364, 84 S.Ct. 88, 11 L.Ed.2d 777; United States v. Harvey, 7th Cir. July 5, 1968, 397 F.2d 526.

The district court must decide in the first instance the factual question whether there was a valid consent to the March 16 search. The government has the burden of proving by clear and positive evidence that an unequivocal, specific, intelligent consent for the search has been given. United States v. Smith, 2 Cir., 308 F.2d 657; Channel v. United States, 9 Cir., 285 F.2d 217; Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649.

The most that can be gleaned from the record before us is that petitioner met the police outside his home on March 15, 1961. He was escorted inside where police told him he was under arrest and asked him to sign a consent to search his home. He signed the consent. A bottle of poison was found twenty-four hours later during a search of his home. Important questions of fact left unresolved include: what did the consent signed by petitioner say; was there an initial search made on March 15 when the consent was signed, or was the search on the 16th the first to be made; was petitioner aware, at the time of signing the consent, that the search would be delayed or that more than one search would be made, or was he under the impression that he was agreeing to a single immediate search; was petitioner aware that the March 16 search was being made; was he in custody when it was made; was he represented by counsel at the time the March 16 search was made, and if so was his lawyer aware of the consent and of the March 16 search.

It is my opinion that this court cannot, without the answers to at least some of these questions, determine that the state has met its burden of proving that there was an unequivocal and specific consent to the March 16 search. We cannot speculate or presume in favor of the waiver of a vital constitutional right.

I would retain jurisdiction and remand with directions to the trial court to conduct further hearings and to make additional findings of fact, to be certified to us, in order that we may make a sound determination of the issues before us. See Willing v. Binenstock, 302 U.S. 272, 277, 58 S.Ct. 175, 82 L.Ed. 248.