Leslie I. Levine, J.
This is a motion to suppress evidence obtained as the result of an alleged unlawful search. Defendant is charged with the offense of falsely reporting an incident, in violation of subdivision 1 of section 240.55 of the Penal Law, a class A misdemeanor. In simple fact, defendant is charged with turning in a false fire alarm on October 23, 1974 in the vicinity of Maple Avenue and South Broadway in the City of White Plains.
*582 The papers read on this motion include the information and a supporting affidavit of a Deputy Fire Chief, notice of motion, supporting affirmation by defendant’s attorney and an affidavit in opposition submitted by the People.
The facts appear to indicate that a Deputy Fire Chief, while answering a false alarm, “noticed a suspect walking ” and ‘1 apprehended the suspect and used the ultraviolet light on him which revealed paste on his right hand.” Apparently, this type of paste is put on fire alarm box handles by the Fire Department as a means of detection.
Was the search valid or illegal? Clearly, no search warrant was ever sought or obtained. Was the search incident to a lawful arrest ? It would appear not. The arrest followed the search, and if the search was illegal ab initio, it cannot be retroactively justified by the fruit that it bears. (Silverthorne Lbr. Co. v. United States, 251 U. S. 385; and People v. Smalls, 63 Misc 2d 322.)
The People assert that the use of an ultraviolet light does not constitute a “ search ” within the scope of relevant precedents. The fire officer did not simply shine a light on defendant. On the papers before the court, he swore that he “ apprehended the suspect and used the ultraviolet light on him ”, This is as much of a search as if he required the suspect to strip, pumped his stomach, etc. The variations in the technology of detection cannot affect the protections afforded by the Bill of Rights. The common denominator between the search herein and any other illegal search is the lack of consent thereto. (Amos v. United States, 255 U. S. 313; Judd v. United States, 190 F. 2d 649.)
The People further assert that suppression does not lie because there was no “seizure” of evidence. This is a distinction that lacks meaning. The evidence is the testimony alluding to the fruits of the search and to require it to be movable, tangible contraband would be analogous to saying that an X-ray picture or fluoroscope could not be evidence. To assert that an illegal search upon which the sole predicate for an arrest is established is justifiable because a seizure was not effected or even possible is to place form over substance and to strain at the leash of reason.
Finally, the People question whether or not .the Deputy Fire Chief is a “ police officer ” or a “ peace officer ” according to the statutory definitions of same. The People submit that, assuming arguendo, there was an illegal search herein since it was not done by a police or peace officer, the exclusionary *583 rationale of Mapp v. Ohio (367 U. S. 643), permits it to be admissible. This argument cannot stand. In the eyes of the proverbial reasonable man, a Deputy Fire Chief in uniform at the scene of a fire or albeit a false alarm represents the ostensible authority of the law. The fact that the Deputy Fire Chief uses the word ‘ ‘ apprehended ’ ’ which in its standard dictionary meaning means “to take into custody; arrest ” indicates that this was the impression meant to be conveyed. When the People go on to argue that even if they were to concede that the Deputy Fire Chief has “police powers ”, that he was then authorized to temporarily detain the defendant and question him, they have again strained at the leash of reason. The use of an ultraviolet light on the hands :of the defendant without his consent exceeds the bounds of temporary detention and questioning.
The crime of falsely reporting an incident, specifically in the case at bar, the turning in of a false alarm, is indeed a reprehensible one. Many lives can be endangered or indeed lost as a result of the commission of this crime. However, the Bill of Rights and all of the cases that have evolved in our criminal jurisprudence which have interpreted said Bill of Rights are not the results of angelic behavior on the part of our citizenry. We have set down rules and limits circumscribing the behavior of those in whom we place authority, and if we were to erode these constitutional safeguards because of the reprehensible nature of the crime involved, the Constitution itself could not survive. '
It is the decision of this court that the evidence of the illegal ultraviolet search and any and all oral evidence arising therefrom be suppressed.