UNITED STATES of America

v.

Michael ESPOSITO, Defendant.

No. 78 CR 650.

United States District Court,
E. D. New York.

Feb. 12, 1980.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for the Government by Diane F. Giacalone, Asst. U. S. Atty., Brooklyn, N. Y.

Ronald P. Fischetti, New York City, for defendant (Anne C. Feigus, of counsel).

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Defendant, charged in a two-count indictment with conspiracy and possession with intent to distribute quantities of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, moves to suppress certain physical evidence and statements claimed to be tainted by an allegedly unlawful search and seizure. The facts as established after an evidentiary hearing in the matter are as follows:

On September 19, 1978, Lieutenant Burt Koch of the Las Vegas Metropolitan Police Department, assigned to the police sub-station at McCarren Airport, received a telephone call from United Airlines officials, who informed him that two individuals, defendant and one Edward Bonilla, had boarded a United flight from J.F.K. Airport in New York to Las Vegas with tickets purchased with a stolen credit card. When the plane arrived at approximately 12:00 o'clock noon, Koch and three other officers—Tony Garibay, Talmadge Wilson and an Officer Cabrales—met the defendant and Bonilla as they came off the plane in the ramp area. The flight stewardess had pointed the suspects out to the police officers.

The officers approached the defendant and Bonilla, identified themselves and advised them of the investigation they were conducting concerning the airline tickets. Detective Wilson requested that defendant produce some type of identification and his airline ticket. In response, defendant produced a ticket bearing his name, and Detective Wilson thereupon advised him of his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant indicated that he understood his rights. The officers then took the defendant and Bonilla back to the sub-station for further questioning.

At the sub-station, Wilson showed Koch the ticket he had obtained from defendant, which had two baggage claim checks attached to the envelope. Koch took the claim checks, gave them to Officer Cabrales and sent him to the United carousel to claim the corresponding bags. The officers in the meantime questioned defendant, who stated in response that he was unaware that the purchase of the tickets was made with a stolen credit card and explained that, while in a bar in New York, an unidentified white male approached him and offered to sell him tickets at a cheaper price than he could obtain.

Officer Cabrales returned with two articles of yellow luggage which bore claim tags that matched the numbers of the stubs on defendant's ticket. Koch asked the defendant if the bags were his. He replied that he had a brown bag and later stated "no they are definitely not mine." Bonilla claimed the bags were not his either. When asked to explain why he possessed claim checks for these bags, defendant claimed there must have been a mistake in New York. Koch then sent Officer Cabrales to the United carousel to search for a brown bag and to see if anyone was looking for two yellow bags.

Cabrales again returned and reported that no luggage was left on the carousel and that no one was searching for a missing bag. Defendant repeated that he was sure the bags were not his. The bags were then opened and a plastic bag seized which contained what proved later to be cocaine. Other articles consistent with defendant's ownership of the luggage were uncovered during a complete search. Defendant was placed under arrest and again advised of his *Miranda* rights. He stated he understood them and shortly thereafter gave an incriminating statement, which he now moves to suppress along with the physical evidence seized.

Defendant initially argued that his conduct with respect to the luggage was not a voluntary abandonment which could justify a warrantless search of the bags. After the hearing, however, the direction of his contentions shifted. He now argues in addition that his arrest was illegal on the ground that the police failed to administer *Miranda* warnings *before* they requested his identification and airline ticket, which he urges was direct evidence of the crime for which he was then under investigation. Although it is not clear whether the basis for this claim is grounded in the Fourth or Fifth Amendment, the court concludes defendant's contentions are without merit and denies the motion to suppress for the following reasons.

Addressing first defendant's claimed improper arrest, we start with his contention that his rights were violated when the police officers requested—and received—production of his airline ticket. The argument is apparently that he was in custody for *Miranda* purposes and hence entitled to his warnings at the outset of the detention rather than after he had produced what he claims was incriminating evidence. Analysis of defendant's claim must begin, however, with a determination of the propriety of the officers' actions when they *first* stopped defendant at the foot of the plane's ramp.

As the Court of Appeals for this circuit noted in *United States v. Oates,* 560 F.2d 45, 58 (2 Cir. 1977), "the issues involved in determining the propriety of stops, arrests and searches must be resolved by an objective rather than a subjective standard" (footnote and citations omitted). Viewed in this manner, defendant's detention at the foot of the ramp for the purpose of ascertaining his identity was clearly a minimally intrusive stop permissible in the circumstances under the rationale of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), rather than an arrest.

Notwithstanding contrary dicta of *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), which intimated that the *Terry* doctrine may be confined to protective searches for weapons and may not be used to justify the investigative stops on reasonable suspicion with which we have become familiar, the law in this circuit remains that an officer's right to make an initial stop depends on a reasonable belief that the suspect is engaging in criminal activity, regardless of whether he is also armed and dangerous. *United States v. Vasquez,* 612 F.2d 1338, 1345 (2 Cir., 1979) (Kaufman, J., concurring). As the Court stated in *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972):

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response."

Thus, investigation of possible criminal behavior, including brief detention for questioning, is permissible even though there is no probable cause to make an arrest as long as the officers are able to point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion. See *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v.*

*Ohio, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1879–1880. See also *United States v. Vasquez, supra; United States v. Nieves,* 609 F.2d 642, 647–48 (2 Cir., 1979); *United States v. Price,* 599 F.2d 494, 500 (2 Cir. 1979). Upon such facts, "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable . . . ." *Adams v. Williams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923. See *United States v. Brignoni-Ponce, supra,* 422 U.S. at 882–83, 95 S.Ct. at 2580–81. Moreover, the Court of Appeals for this circuit recently recognized that in appropriate circumstances the *Terry* doctrine authorizes not only investigative stops but also temporary detention of suspects and removal to a location more conducive to effective interrogation. *United States v. Nieves, supra,* 609 F.2d at 647, citing *United States v. Oates, supra,* 560 F.2d at 56–61.

Here, there is no dispute that the officers had in their possession sufficient information or articulable facts to warrant the initial stop under the *Terry* rationale. Defendant argues in his supplemental memorandum, in fact, that the officers lacked probable cause to arrest him until *after* he identified himself and relinquished the incriminating airline ticket, while in no manner disputing the sufficiency of the information to support the initial stop. Thus, the question becomes whether the officers acted within the permissible limits of the *Terry* doctrine when they asked defendant to identify himself and produce his airline ticket.

█ A brief stop under the circumstances to ascertain the defendant's identification was undoubtedly reasonable, *Adams v. Williams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923, as well as temporary detention of the suspects and removal to a location more conducive to effective interrogation, *United States v. Nieves, supra,* 609 F.2d at 647.

Far more intrusive detentions for the purpose of investigating further the circumstances under which agents confronted a suspect have been sanctioned. See, *e. g., United States v. Thevis,* 469 F.Supp. 490, 501 (D.Conn.), *aff'd,* 614 F.2d 1293 (2 Cir. 1979); *United States v. Wylie,* 186 U.S.App. D.C. 231, 239, 569 F.2d 62, 70 (D.C.Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978). Since the initial stop was in all respects permissible, it remains only to determine whether any search was valid as based on defendant's consent, as the government urges. See *United States v. Brignoni-Ponce, supra,* 422 U.S. at 881–82, 95 S.Ct. at 2580; *United States v. Martinez-Fuerte,* 428 U.S. 543, 567, 96 S.Ct. 3074, 3087, 49 L.Ed.2d 1116 (1976). See also *Dunaway v. New York, supra,* 99 S.Ct. at 2256.[1]

█ Although mere acquiescence to lawful authority or submission to express or implied coercion cannot validate a search, *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina,* 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968); *United States v. Price, supra,* 599 F.2d at 503, the government can show that the consent was freely and voluntarily given from the totality of all the circumstances, *Schneckloth v. Bustamonte, supra,* 412 U.S. at 227, 93 S.Ct. at 2047; *United States v. Price, supra,* 599 F.2d at 503. Here the government has made such a showing.

Although defendant candidly admits that his "production" of his ticket in response to the officers' request is not strictly a search, he contends nonetheless that he was entitled to Fourth Amendment protection and that his actions in the circumstances were involuntary, no more than a submission to lawful authority. For this proposition he quotes from a District of Columbia case, *Judd v. United States,* 89 U.S.App.D.C. 64,

---

1. The government also seeks to justify the request for production of the airline ticket on the theory that it was imperative not only to confirm the officers' tentative identification of the suspects but also to assure themselves that an improperly purchased ticket had actually been used by the suspects. In view of the court's holding below, we need not comment on the merits of this proposition.

66, 190 F.2d 649, 651 (D.C.Cir. 1951), in which the court endorsed the theory that a person in custody who is in possession of contraband cannot be readily found to have consented to a search likely to discover the contraband and that the government has a particularly heavy burden of demonstrating consent in such circumstances. This circuit, however, has adopted a contrary position with respect to the first half of this proposition. In *United States v. Gorman*, 355 F.2d 151 (2 Cir. 1965), *cert. denied*, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966), Judge Friendly answered a defendant's contention that since "it is incredible he would freely have consented to a search which he knew would disclose incriminating evidence, his words of consent should be considered an involuntary submission to authority and therefore insufficient to waive a constitutional right," *id.* at 158–59, by stating that

> "[a]cceptance of this contention would mean that expressions of consent could relieve officers of the need of obtaining a warrant only when the speaker was not aware that the search would disclose damaging evidence—a fact usually not within the officers' knowledge. Such a ruling would almost destroy the principle permitting a search on consent but would enable experienced criminals to lay traps for officers who, relying on the words of consent, failed to secure a search warrant that would have been theirs for the asking." *Id.* at 159.

Finding that no force or deception was either used or threatened, Judge Friendly sustained the consent search where efficient and lawful investigation had produced a situation in which the defendant could hardly avoid giving such consent. *Id.* See also *United States v. Price, supra,* 599 F.2d at 503.

■ Here, the credible evidence revealed that the officers initially confronted the defendant in a public area of the airport. They did not have their guns drawn. There is no evidence that either force or deception was used. After identifying themselves and stating their purpose in stopping the defendant, the officers requested identification and defendant's airline ticket. Al-

though there is no evidence that defendant knew of his right to refuse to consent, neither this nor the absence of an explicit warning of Fourth Amendment rights necessarily precludes a finding that the consent was voluntary. See *United States v. Matlock*, 415 U.S. 164, 167 n.2, 94 S.Ct. 988, 991 n.2, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte, supra,* 412 U.S. at 231–33, 93 S.Ct. at 2049–50. The court must look to the totality of the circumstances to determine whether the consent was in fact freely given, and under the circumstances the court concludes that defendant's production of his airline ticket was based on his voluntary consent. See *Schneckloth v. Bustamonte, supra.* See also *United States v. Gaines*, 441 F.2d 1122 (2 Cir.), *vacated on other grounds*, 404 U.S. 878, 92 S.Ct. 223, 30 L.Ed.2d 159 (1971).

Even assuming, moreover, that defendant was in custody or arrested immediately upon the initial encounter with the police officers, this fact would not necessarily vitiate a consent. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). In *Watson*, the Court concluded that the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search. *Id.* at 424, 96 S.Ct. at 828. See *United States v. Wiener*, 534 F.2d 15, 17 (2 Cir. 1976), *cert. denied*, 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1977). While the defendant in *Watson* had been given *Miranda* warnings and was cautioned that the results of the search of his car could be used against him, the Court looked to the totality of the circumstances to determine the voluntariness of the consent under *Schneckloth*.

Under the circumstances of this case and assuming an arrest took place with its "aura of coercion," *Gorman v. United States*, 380 F.2d 158, 163 (1 Cir. 1967), the government has nonetheless met its particularly heavy burden of showing voluntary consent. Here, the consent to produce the ticket occurred within moments after the officers approached the defendant and Bonilla, identified themselves and stated their purpose in stopping the defendants. The

record is bare of any suggestion of an overt act or threat of force. No promises were made and no indication exists of subtle coercion that might have flawed defendant's judgment. There is no evidence that the defendant failed to appreciate his situation (and perhaps appreciated it all too well and thought that cooperation might have forestalled the formal announcement of arrest, see *United States v. Mapp*, 476 F.2d 67, 79 n.14 (2 Cir. 1973), *distinguishing United States v. Gaines, supra*, 441 F.2d 1122), or was unable to exercise a free choice in the face of a custodial arrest. See *United States v. Watson, supra*, 423 U.S. at 424–25, 96 S.Ct. at 828. The case therefore is wholly unlike the circumstances in *United States v. Mapp, supra*, which compelled a finding of an involuntary waiver under the standard set in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), subsequently found inapplicable to consent searches in *Schneckloth*. There the Court of Appeals for this circuit based its decision on the extraordinary circumstances of the case. Five or six officers broke down a Mrs. Walters' door at 2:00 a. m., entered her bedroom with guns drawn and obtained her consent to search after "demanding" the package "Sonny left earlier." The officers failed to give her *Miranda* warnings or take any action designed to permit her to make a knowing and intelligent decision. 476 F.2d at 78.

Turning now to the propriety of the officers' actions with respect to defendant's luggage, we begin by noting that it could be suggested that defendant's consent to produce his ticket was also evidence of his willingness to permit the officers to use the claim checks to recover the corresponding luggage, at least in the absence of an express indication that the officers should not seek to recover his luggage for him. This finding would be appropriate in this case since it is undisputed that the officers, immediately upon verifying that defendant

was indeed the man suspected of travelling on a ticket purchased with a stolen credit card, gave the defendant his *Miranda* warnings. Defendant was undoubtedly aware at that moment that his situation had become precarious and perhaps had concluded that consent would have avoided discovery of the drugs in the bag. The court need not address the merits of such a contention, however, since there is an independent ground, fully consistent with the evidence adduced at the hearing, that supports the officers' actions.

When Cabrales returned with the two pieces of baggage, defendant explicitly denied ownership of those bags, claiming instead that an error must have been made in New York and that his bag was brown. This explicit denial of ownership was subsequently repeated. In these circumstances, since we have already concluded that the initial encounter was proper in all respects and defendant's production of his ticket voluntary, it is apparent that defendant also voluntarily consented to the search of the bags which matched the claim checks attached to his airline ticket, notwithstanding the detention under which he found himself. As in *United States v. Price, supra*, 599 F.2d at 503, defendant's

> "disclaimer that the bag was not his and that the agents could do whatever they wanted with it was anything but ambiguous. It clearly signified consent to the requested search of the bag which had been in his exclusive possession at least from the moment he was spotted by Agent Whitmore."

Accordingly, since the court credits the testimony of the officers who testified to the facts surrounding defendant's consent to the searches, the government has met its burden of proving that the consents were voluntarily given.[2] The motion to suppress is denied in all respects.

SO ORDERED.

---

**2.** The government initially contended the defendant had voluntarily abandoned his luggage as justification for the officers' subsequent search. Although there is some force in this argument, it need not be reached since the court has already held, consistent with the theory employed by the court in *United States v. Price, supra*, 599 F.2d 494, 503, on similar facts, that consent to search was given in the circumstances.