UNITED STATES of America ex rel.
George COMBS, Petitioner-
Appellant,

v.

J. E. LA VALLEE, Warden, Clinton State
Prison, Dannemora, New York,
Respondent-Appellee.

No. 678, Docket 32391.

United States Court of Appeals
Second Circuit.

Argued July 22, 1969.

Decided Oct. 22, 1969.

Robert B. Fiske, Jr., New York City (William H. Levit, Jr., New York City, of counsel), for appellant.

Hillel Hoffman, Asst. Atty. Gen. of the State of New York (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for appellee.

Before WATERMAN and HAYS, Circuit Judges, and BARTELS, District Judge.*

HAYS, Circuit Judge:

George Combs appeals from an order of the United States District Court for the Southern District of New York denying his application for a writ of habeas corpus. We affirm.

The only question on this appeal is the legality, under the fourth and fourteenth amendments, of the seizure of certain evidence.

Appellant was convicted of robbery in the second degree upon a plea of guilty in Supreme Court, New York County. Before pleading guilty, appellant moved to suppress the introduction of the seized evidence. A suppression hearing was held at which the following facts were developed.

Appellant was on parole from Elmira Reformatory. His parole officer was one Robert H. Campbell. In the discharge of his duties Campbell visited Combs once a month at the apartment where he lived with his mother. Campbell was informed by the New York City

---

* Of the Eastern District of New York, sitting by designation.

police of Combs' arrest on the robbery charge. He went to Combs' apartment, accompanied by three New York City detectives and by another parole officer. No attempt was made to obtain a search warrant.

The five men arrived at Combs' apartment at 1:45 p. m. In the apartment at that time were Combs' mother, Mrs. Canton, and two ladies from her church. Mrs. Canton answered the door, and invited the men to come in. Campbell and the others went into the living room and Campbell introduced the others. They all sat down and Campbell told Mrs. Canton that appellant and his brother had been arrested. He asked to see her sons' room and Mrs. Canton said, "Well, I just made the beds, go in and take a look."

(Mrs. Canton testified that one of the officers said, "We have to search your house," that she replied, "All right; but where is your search warrant," and that he said, "We don't need it." Campbell testified that nothing was said about a search warrant.)

Campbell and two of the detectives searched appellant's room. Mrs. Canton aided in the search. After the search of appellant's room was completed, Mrs. Canton took one of the officers, a Detective Brady, into her room where they could "talk privately" so that she would not be embarrassed by having her church friends overhear their conversation. Brady noticed a television set in the room and Mrs. Canton told him that her sons had given her the set.

Brady checked the serial number of the television set and told Mrs. Canton that the set had been stolen and that they would have to take it. She said, "Take it out of here because I don't want anything in my house that is stolen." The officers left the apartment with the set about an hour and a half after their arrival.

Appellant's mother testified that she permitted the search because "I didn't want them to get the impression I didn't want them to look because it would look like I was hiding something, and I had nothing to hide."

Combs' motion to suppress the seized evidence, i. e., the television set, was denied. The court found the search to have been "legal and valid" and stated, "I do not believe that there was any request for a search warrant." The prosecution requested that the record reflect that the court had "made a factual determination here that there was no coercion used, that the search was consented to." The court said, "That was implied" in its finding.

After the denial of his motion to suppress, appellant pleaded guilty. He then appealed his conviction, as permitted by Section 813–c of the New York Code of Criminal Procedure (McKinney Supp. 1968), challenging the denial of his motion to suppress. The conviction was affirmed by the Appellate Division without opinion, People v. Combs, 25 A.D.2d 497, 267 N.Y.S.2d 885 (1966). The New York Court of Appeals denied leave to appeal and the United States Supreme Court denied certiorari, 385 U.S. 878, 87 S.Ct. 157, 17 L.Ed.2d 105 (1966). The New York Court of Appeals subsequently denied appellant's application for reconsideration of his motion for leave to appeal.

Appellant then filed an application for a writ of habeas corpus in the United States District Court for the Southern District of New York claiming that the denial of his motion to suppress was constitutionally erroneous. The writ was denied and this appeal is taken from the order of denial.[1]

---

1. As appellant followed the procedure established in Section 813-c, New York Code of Criminal Procedure (McKinney Supp. 1968), his plea of guilty does not prevent him from raising his search and seizure claim on federal habeas corpus. United States ex rel. Molloy v. Follette, 391 F. 2d 231 (2d Cir.), cert. denied, 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed.2d 658 (1968) ; United States ex rel. Rogers v. Warden, 381 F.2d 209 (2d Cir. 1967).

Appellant's first contention is that the consent given by his mother was invalid because "consent in the presence of five law officers to avoid embarrassment in front of her church friends cannot be held to have been voluntarily given." Recognizing that the scope of our review of the state court's fact findings is limited to that permitted by 28 U.S.C. § 2254(d) (Supp. IV 1965–68), appellant argues that the state court did not apply the proper standard of law in concluding that consent had been given. He relies on Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), which was decided after the state court and federal district court decisions in this case.

In *Bumper* four police officers came to defendant's house and were met by his grandmother. One of the officers said, "I have a search warrant to search your house," and defendant's grandmother, who did not know about the alleged offense, said, "Go ahead." She was not threatened in any way and did not participate in the search at which a rifle was seized.

In arguing that the search was valid, the state relied on consent by the grandmother; it did not produce a search warrant. The Supreme Court held that no proper consent had been given. It reasoned that:

> "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." 391 U.S. at 550, 88 S.Ct. at 1792.

■ We have no reason to reject the judge's finding in the present case that the officers made no claim that they had a search warrant or that they were authorized to .search the apartment with-out a warrant. In our case, unlike *Bumper*, Mrs. Canton was well acquainted with Campbell and would not have been intimidated by his coming again to her apartment where he had already visited a number of times. In *Bumper* there was no suggestion that the grandmother had assisted in the search as did appellant's mother in our case. Mrs. Canton's participation was indicative of consent. See United States v. Hall, 348 F.2d 837, 843 (2d Cir.), cert. denied, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965); United States v. Smith, 308 F. 2d 657, 664 (2d Cir. 1962), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963). It is clear that the *Bumper* case does not rule the case before us.

■ Appellant contends that the consent given by his mother was invalid because of the failure of the officers to warn as to her fourth amendment rights in the manner required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) as to fifth and sixth amendment rights. In support of this proposition he cites two Seventh Circuit cases, United States v. Miller, 395 F.2d 116, 118 (7th Cir.) cert. denied, 393 U.S. 846, 89 S.Ct. 132, 21 L.Ed.2d 117 (1968), and United States v. Nikrasch, 367 F.2d 740, 744 (7th Cir. 1966), and two district court cases, United States v. Moderacki, 280 F.Supp. 633 (D.Del. 1968), and United States v. Blalock, 255 F.Supp. 268 (E.D.Pa.1966).

We reject those cases as did the Court of Appeals for the First Circuit in Gorman v. United States, 380 F.2d 158, 164 (1st Cir. 1967).[2] To fulfill the purpose of the fourth amendment—controlling police conduct—it is unnecessary to adopt a rule that a search is per se invalid unless it is preceded by warnings as to fourth amendment rights. The courts are competent to determine whether valid consent has been given absent such warnings. A per se rule is

---

2. While not rejecting outright its statement in *Nikrasch*, the Court of Appeals of the Seventh Circuit has described it as being "of dubious propriety." Byrd v.

Lane, 398 F.2d 750, 755 (7th Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 625, 21 L.Ed.2d 564 (1969).

undesirable because of its adverse effect on proper law enforcement efforts.

■ There is no merit in appellant's contention that his mother was without authority to bind him by consenting to the search. See Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Bumper v. North Carolina, *supra*, 391 U.S. at 548, note 11, 88 S.Ct. 1788.

Affirmed.