**UNITED STATES of America ex rel.
Edward J. KISLIN, 46557**

v.

**STATE OF NEW JERSEY, Appellant.**

**No. 18454.**

United States Court of Appeals,
Third Circuit.

Argued June 4, 1970.

Decided July 9, 1970.

Elliot L. Katz, Asst. County Prosecutor, Monmouth County, Freehold, N.J. (Vincent P. Keuper, Monmouth County Prosecutor, Arnold B. Levin, Asst. County Prosecutor, Freehold, N.J., on the brief), for appellant.

Edward J. Kislin, pro se.

Before FREEDMAN, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

When an affidavit in support of a search warrant is based in part on material supplied to the affiant by an informant there arises a number of thorny questions under the Fourth Amendment of the Constitution. The United States Supreme Court has in a number of cases grappled with the problem whether "probable cause" exists in such cases for the issuance of a warrant. *See e. g.* Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Since Spinelli v. United States is the most recent Supreme Court declaration in which the Court "attempted to define with more precision the conditions governing the issuance of a warrant"[1] on the basis of information from an informant, the application of *Spinelli* to the facts in this case is the primary concern in the present appeal.[2]

On June 8, 1967, the New Jersey police pursuant to a search warrant conducted a raid and a subsequent search and seizure at the home of Edward J. Kislin. The search warrant was granted on the basis of an affidavit by Detective King of the New Jersey State Police. The affidavit contained the following pertinent information:

The affiant had good reason to believe and did believe that bets "on the running of horses being taken and received over a telephone * * * at 41 Victoria Place," Middletown, New Jersey, a

dwelling occupied by Edward and Esther Kislin, and that certain property used as a means of committing a misdemeanor in violation of the bookmaking provisions of N.J.S. 2A:112–3, N.J.S.A., was located in that house, "said property consisting of pads, paper, slips, memorandum pads, pens, pencils, monies and other bookmaking paraphernalia."

The grounds for the affiant's belief as set forth in the affidavit were: (a) Affiant received information from "a reliable informant who has *personal knowledge*[3] that bets are taken on the running of horses by Edward Kislin over the telephone at his house located at 41 Victoria Place, Middletown Township, New Jersey". (b) A surveillance of the defendant's house was made on seventeen days during May and June, 1967. On those days, Kislin was observed entering the house about twelve noon and leaving about two p. m. (c) On five occasions Kislin was observed purchasing horse racing publications at a newspaper store and returning directly to his home. (d) Records reveal that Edward and Esther Kislin owned the house at the location stated by the informant. (e) Records reveal that Edward Kislin had previously been arrested and convicted of bookmaking in New Jersey. (f) His wife, Esther Kislin, had previously been arrested and charged with bookmaking. (g) Records of the New Jersey Telephone Company reflect that the telephone number at the described house is listed in the name of Leon Kislin.

As a result of the raid, search and seizure, Kislin was indicted by a grand jury for bookmaking in violation of N. J.S. 2A:112–3, N.J.S.A. Prior to trial, on December 22, 1967, Kislin filed a motion in the New Jersey Superior Court to suppress the evidence obtained pur-

---

1. Desist v. United States, 394 U.S. 244, 263, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan dissenting). For some comment on *Spinelli* see 83 Harv.L.Rev. 177 (1969); 30 U.Pitts.L.Rev. 735 (1969); 10 William & Mary L.Rev. 1004 (1969).

2. The Fourth Amendment standards apply to the states under the Fourteenth Amendment. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Aguilar v. Texas, 378 U.S. at 110, 84 S.Ct. 1509.

3. Emphasis added.

suant to the search and seizure.[4] The motion to suppress was rejected, and the Appellate Division of the New Jersey Superior Court denied leave to appeal. Kislin was tried before the Honorable M. Raymond McGowan and a jury on April 2 and 3, 1968, and found guilty. On May 22, 1968, he was sentenced to two to three years in prison.[5] The Appellate Division of the Superior Court affirmed the conviction, and the New Jersey Supreme Court denied Kislin's petition for certification.

On September 12, 1969, Kislin filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey. The case was referred to a Federal Magistrate for a report and recommendation. After comparing the affidavit on which the search warrant was issued with that in Spinelli v. United States, the Federal Magistrate concluded that the warrant to search Kislin's house was invalid. Judge Reyneir H. Wortendyke approved the report and recommendation of the Federal Magistrate, and on November 7, 1969, without a hearing, granted the writ. The State of New Jersey appealed to this Court.

■ We begin our consideration with the language of the Fourth Amendment which states that "no warrant shall issue but upon probable cause". The standard of probable cause requires a showing of probability of criminal activity.[6]

■ A search warrant is not issued upon probable cause if the affidavit upon which it is issued merely recites that it is the affiant's "suspicion" or "belief" that a crime is being committed, without disclosure of supporting facts or circumstances. Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933). Nor is there probable cause for the issuance of a warrant if the affiant relies on information from another person without a sworn statement of the circumstances surrounding the informant's knowledge or his reliability. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The determination of probable cause must be made by a "neutral and a detached magistrate" who has information regarding the facts and circumstances upon which the officer bases his suspicion of criminal activity. Aguilar v. Texas, *supra*, Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ Spinelli v. United States discusses the criteria for determining whether a search warrant issued on the affidavit of a police officer who relies in part on information from an informant satisfies the Fourth Amendment's requirement of "probable cause". In *Spinelli*, the Court attempted to clarify its earlier decision of Aguilar v. Texas, *supra*, which reversed a conviction based on evidence seized pursuant to a warrant issued on the affidavit of police officers that they had "reliable information from a credible person" that various drugs were on certain described premises.

The affidavit in *Spinelli* contained language regarding an informant's tip similar to the language in *Aguilar*. In addition, however, it set forth various allegations based on personal knowledge which the government contended supported or confirmed the informant's information and thus gave the magistrate probable cause to issue the warrant. The Supreme Court rejected the government's position and found nothing in the additional sworn statements "which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably

---

4. *See* Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

5. Kislin has served most of his sentence. The importance of this appeal is the fact that a valid conviction would make Kislin a two-time offender in New Jersey and a subsequent conviction would result in greater penalties.

6. *See e. g.* Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

being committed". 393 U.S. at 418, 89 S.Ct. at 590.[7]

The appeal before this Court presents a close case. The State of New Jersey distinguishes the affidavit here from that in *Spinelli;* Kislin shows the similarities between the two. We have compared the affidavits carefully and consider the affidavit in this case different from that in *Spinelli* and sufficient to uphold the warrant. We, therefore, disagree with the conclusion of the Federal Magistrate that the supporting circumstances in the affidavit here are weaker than those in *Spinelli.*

The affidavit in *Spinelli* contained four basic allegations:

(1) The FBI had followed Spinelli for five days during one month and saw him crossing from Illinois into St. Louis, Missouri between eleven a. m. and twelve fifteen p. m. On four of these days, Spinelli went to the parking lot adjacent to a certain apartment house between three thirty p. m. and four forty-five p. m. Spinelli was seen entering a particular apartment in the building on one of these days. (There was no account of Spinelli's movements between the time he entered St. Louis and the late afternoon).

(2) An FBI check revealed there were two telephones in the apartment Spinelli entered.

(3) Spinelli was known as a bookmaker.

(4) The FBI "had been informed by a confidential reliable informant" that Spinelli was operating a bookmaking business at the telephone assigned to that apartment.

When the Supreme Court examined the *Spinelli* affidavit, it acknowledged that the "informant's tip ha[d] a fundamental place in [the] warrant application". 393 U.S. at 414, 89 S.Ct. at 588. The Court said the initial question was whether that tip met the *Aguilar* standards. *Aguilar* requires that the magistrate have sufficient information to support the statement that the informer is "reliable", and "a sufficient statement of the underlying circumstances from which the informer based his conclusion".[8] In *Aguilar* the Court stated:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable'." 378 U.S. at 114, 84 S.Ct. at 1514.

The affidavit in the present case, as that in *Spinelli,* stated that the informant was "reliable", but contained "no reason in support of this conclusion". Spinelli v. United States, 393 U.S. at 416, 89 S.Ct. at 589. Both affidavits, therefore, fail the first part of the test in *Aguilar.* They differ, however, when the statements are evaluated against the second prong of the *Aguilar* test. In *Spinelli* "it [was] not alleged that the informant *personally* observed Spinelli at work or that he ever placed a bet with him." 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d 637. The informant may have relied on information from another source, may have inferred it, or in fact saw the gambling. The affidavit in this case, however, states that the informer had "personal knowledge" that Kislin was taking bets. This statement is admittedly not a detailed statement of the basis for the informant's

---

**7.** *Spinelli* was a 5–3 decision. Justice White stated that he was concurring to prevent a tie vote, but expressed doubts about the decision when compared with Draper v. United States, 358 U.S. 307,

79 S.Ct. 329, 3 L.Ed.2d 327 (1959). 393 U.S. at 423, 89 S.Ct. at 592.

**8.** *See also* United States v. Schartner, 426 F.2d 470 (3d Cir. 1970).

knowledge. It is certainly not enough standing alone to support a finding of probable cause. But it does tend to support a conclusion of first hand information and thus eliminate one of the concerns of the Supreme Court. In *Aguilar* the Court said: "The affidavit here not only contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained there, *it does not even contain an affirmative allegation that affiant's unidentified source spoke with personal knowledge:* To all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession". 378 U.S. at 113–114, 84 S.Ct. at 1513.[9] In a footnote in *Aguilar* the Supreme Court explained the type of abuse which could occur if search warrants were issued on the statement that the affiant had "reliable information from a credible person", without some assurance that the source had personal knowledge of the facts alleged.

> "To approve this affidavit would open the door to easy circumvention of the rule announced in *Nathanson* and *Giordenello*. A police officer who arrived at the 'suspicion, belief or mere conclusion' that narcotics were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had 'received reliable information from a credible person' that the narcotics were in someone's possession." 378 U.S. at 114 n. 4, 84 S.Ct. at 1513, n. 4.

The allegations regarding the informant's source of knowledge in this case are therefore entitled to greater weight than those in *Spinelli*. Nevertheless, since there is nothing in the affidavit to explain the reason the informant is considered "reliable" such allegation is insufficient to establish probable cause. There must be some allegation in the af-

fidavit tending to confirm the informant's reliability which is more substantial than that in *Spinelli*.

Unlike the statement in *Spinelli* that Spinelli was a "known" gambler, the present affidavit states that Kislin had a prior conviction for bookmaking. Although a prior conviction alone is certainly an insufficient basis for a magistrate's finding of probable cause, we consider it different from a suspicion that one is a "known" gambler. A prior conviction is a fact of record rather than suspicion based on hearsay. It may be used to impeach a witness at trial. Although it is inadmissible at trial as evidence of the commission of the crime charged, there is a "difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search." Draper v. United States, 358 U.S. 307, 311–312, 79 S.Ct. 329, 332, 3 L.Ed.2d 327 (1959).

Verification of the informant's information in both *Spinelli* and in the present case was attempted by surveillance. The surveillance here was considerably longer than that in *Spinelli* —17 days versus five days, and the information obtained created a greater suspicion than that in *Spinelli*. Kislin went to his house around twelve noon and left about two o'clock p. m. —the two hours preceding the starting time at race tracks; Spinelli went to St. Louis approximately twelve, but his whereabouts were not reported from such time until he went to an apartment house lot at three or four forty-five p. m.

Further support for the officer's suspicion was based on his observation of Kislin purchasing racing sheets before he went to his house. Independent police investigation confirmed the reliability of the informant's tip when the investigator revealed that "Kislin owned the house described by the informant as the place where bets were taken." Spinelli

---

9. The Supreme Court cited Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) and Nathanson v. United States, *supra*.

merely went to an apartment house five days and was actually observed entering the apartment only once.

A footnote in *Aguilar* distinguished the affidavit in *Aguilar*, which was held to be defective, from one which alleges independent verification of the informant's tip by surveillance. 378 U.S. at 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723. *Spinelli* does not appear to overrule this aspect of *Aguilar*.

We consider the allegations in the affidavit before us sufficient to support a finding of probable cause,[10] in keeping with the language of the *Spinelli* Court that "we do not retreat from the established proposition that only the probability, and not a prima facie showing of criminal activity is the standard of probable cause * * * ; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial * * * ; that in judging probable cause, issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense * * * ; and that their determination of probable cause should be paid great deference by reviewing courts." 393 U.S. at 419, 89 S. Ct. at 590.

In *Spinelli*, the Court also accepted the continuing validity of Draper v. United States,[11] *supra*. Although Justice White noted the possibility of conflict between the two opinions, *Draper* has not been overruled. It indicates that searches based on informant's information may be valid without facts regarding the source of the informant's knowledge.

In *Draper*, the Court said that an officer could rely upon information received through an informant rather than upon his direct observation so long as

the informant's statement was corroborated. In that case, the Supreme Court held that the informant's statement that Draper was carrying narcotics was confirmed when the officer verified the informant's description of the suspect's appearance and presence on a given day. If confirmation of an informant's tip was achieved by such superficial information, then the officers in the present case confirmed the informants' information about Kislin's bookmaking by their surveillance of him.

It would be quite difficult for the New Jersey police to confirm the informant's tip about Kislin's bookmaking operation without actually seeing him commit the crime. They verified he lived and owned the house where the informant said he took bets, observed him go there about noon and leave about two o'clock p. m. on the seventeen days of surveillance and saw him bring racing papers on five of those days. We consider this verification of the same nature as that in *Draper* for the type of offense suspected here.

■ As previously indicated, this is a borderline case. But we consider the following language of the Supreme Court appropriate to this situation: "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); Jones v. United States, 362 U. S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).[12]

Applying these standards to the facts alleged in the affidavit before us there was sufficient reason for a magistrate

---

10. *But compare* United States v. Flanagan, 423 F.2d 745 (5th Cir. 1970).

11. *See also*, United States v. Mitchell, 425 F.2d 1353 (8th Cir. 1970).

12. For a recent case disapproving a search without a warrant *see* Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). *But cf.* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

to believe probable cause existed that a bookmaking operation was conducted on the described premises. Though the magistrate may have found the affidavit insufficient, there was a substantial basis from which he would have concluded probable cause existed.[13]

The judgment of the District Court will be reversed.

13. *Cf*. Jones v. United States, supra, 362 U.S. at 271, 80 S.Ct. 725.