UNITED STATES of America

v.

Robert SINGLETON, alias Popeye, Charles William Mosby.

Appeal of Charles William Mosby.

No. 18908.

United States Court of Appeals, Third Circuit.

Argued Nov. 20, 1970.

Decided March 2, 1971.

Adams, Circuit Judge, concurred and filed opinion.

382

H. David Rothman, Pittsburgh, Pa., for appellant.

Charles F. Scarlata, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Douglas D. McBroom, Asst. U. S. Atty., Pittsburgh, Pa., on the brief) for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

Charles William Mosby was indicted in the United States District Court for the Western District of Pennsylvania in a two-count indictment charging him and Robert Singleton with violations of the Federal narcotics laws. After pretrial motions for the suppression of certain physical evidence seized and a confession given by Mosby were denied, he waived his right to jury trial and by stipulation, was tried before the court on the second count of the indictment.[1] Mosby was found guilty and received a suspended sentence of seven years im-

---

1. This count charged the two co-defendants with unlawfully, willfully and knowingly dispensing, distributing and purchasing a certain amount of heroin not in the original stamped package in violation of 26 U.S.C. § 4704(a) and 26 U.S.C. § 7237. The government proceeded against appellant on the theory that he was guilty of aiding and abetting Singleton in the unlawful purchase and distribution of heroin.

prisonment, a fine of $2,500. and the costs of prosecution, and placed on probation for a period of four years. This appeal followed.[2]

The questions raised relate to the admissibility of the seized evidence and the written confession. Appellant argues that the search and seizure were invalid because the affidavit used to obtain the search warrant was purely conclusionary and unsupported by sufficient underlying facts to reveal probable cause and further because the search warrant was served in violation of 18 U.S.C. § 3109. With regard to the confession, it is argued that it was inadmissible because appellant was not advised of his rights under the Fourth Amendment and, additionally, that there was not sufficient, independent, corroborative evidence of the allegations of count 2 of the indictment to justify the admission of the confession.

We turn first to the question of the search and seizure. On September 22, 1967, Detective Edward Costanza of the Allegheny County Detective Bureau, Narcotics Squad received a tip from an informant, who had supplied reliable information in the past, to the effect that Charles Mosby and Robert Singleton, who was known as "Popeye," were "bagging" narcotics in the premises occupied by Mosby. As a result of this tip, the premises, located at 217 Standard Street, Pittsburgh, Pennsylvania, were placed under surveillance. The informant had advised the detective that Singleton would be in the area at 8:00 o'clock in the morning and again at 5:00 o'clock in the afternoon. The surveillance verified Singleton's presence in the area at the stated time.

The affidavit in support of the warrant, executed by Costanza, said that he had reason to believe that heroin, narcotics paraphernalia and dangerous drugs were present on the premises, which were occupied by appellant and his wife,

and that Robert Singleton was using said premises to deal in the traffic of heroin. The affidavit recited a description of a white Pontiac automobile used by Singleton. It further stated that the detective's belief was based upon

> "information received from a confidential informant who has furnished reliable information to the affiant in the past several years leading to and resulting in the arrest and convictions of numerous dealers in and users of narcotics in the County of Allegheny to the effect that one Robert Singleton has been using the premises * * * for the purpose of preparing Heroin for distribution and sell [sic] by virtue of a process known as 'Cutting' and further packaging of the same in individual containers. * * * "

The affidavit went on to recite that the affiant, accompanied by another county detective and federal narcotics agents, had personally observed the premises on four different occasions and had seen Robert Singleton entering thereon at about 8:00 a. m. and after 5 p. m. and that such visitations were in accordance with information received from the informant. The affidavit was dated October 2, 1967. The search warrant was issued the same day.

On October 4, 1968, Singleton was seen entering the premises at 8:20 a. m. The search warrant was executed approximately fifteen minutes later.

Appellant argues that the affidavit is defective under the standards formulated in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In the earlier case, it was established that, where the authorities, in applying for a search warrant, rely completely upon the tip of an informant, there must be a sufficient disclosure of any underlying circumstances from which the informant concluded that the suspect was engaged

2. The charge against appellant was severed from that against Singleton. The latter pleaded guilty to count 2 of the indict-

ment. His conviction thereon is not challenged in this appeal.

in criminal conduct and from which the authorities concluded that the informant was credible or his information reliable, to enable the impartial magistrate to judge the validity of the informant's conclusion. Spinelli indicates that where the informer's tip is corroborated by other information, the magistrate must be satisfied that the information disclosed by the informant, coupled with the other information, is at least as trustworthy as the informer's tip would need to be to stand alone under Aguilar.

Looking at the affidavit on its face, it is clear that the second test of Aguilar is satisfied, namely, the requirement that affidavit recite facts which led the affiant to conclude that the informant's tip was reliable. It has often been held that an indication that the informant had in the past supplied information leading to the arrest and conviction of other criminals is sufficient. It is not necessary for the affidavit to detail specific arrests or convictions as appellant argues. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Gonzales v. Beto, 425 F.2d 963 (5 Cir. 1970); United States v. Vigo, 413 F.2d 691 (5 Cir. 1969); United States v. Suarez, 380 F.2d 713 (2 Cir. 1967); Gabriel v. United States, 366 F.2d 726 (9 Cir. 1966).

On the other hand, the informant's tip standing alone does not satisfy the first Aguilar test. It does not, in any manner, disclose how the informant reached the conclusion that Singleton and Mosby were engaged in criminal conduct. It merely states a conclusion, buttressed by no facts to indicate that the informant observed narcotics or narcotics paraphernalia on the premises.

However, the informant's tip does not stand alone. This case is governed by Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)[3] and its progeny, which hold that, where

an informant's tip is verified by independent personal observations by police, probable cause may be established. United States ex rel. Kislin v. New Jersey, 429 F.2d 950 (3 Cir. 1970). Here the information provided by the undisclosed informant, to the effect that Robert Singleton would be in the area of and entering 217 Standard Street at approximately 8:00 o'clock a. m. and 5:00 o'clock p. m. and that he would be driving a white 1965 Pontiac, registration number 15837N, were borne out by the independent observations of Detective Costanza and others, and this verification was sworn to in the affidavit presented to the justice of the peace in support of an application for a search warrant. Cf. Gonzales v. Beto, 425 F.2d 963 (5 Cir. 1970).

In determining whether a search warrant should have been issued, we must decide whether the evidence presented indicated a probability of criminal activity. More is not required. It is elementary that in passing on the validity of a warrant, the court may consider only the information brought to the magistrate's attention, no more and no less. Aguilar v. Texas, 378 U.S. at 109 n. 1, 84 S.Ct. 1509.

The magistrate's determination of probable cause "should be paid great deference by reviewing courts." Spinelli v. United States, supra. It has been noted that "police officers should be encouraged to submit their evidence to a magistrate and request the issuance of search warrants before acting, and 'a grudging or negative attitude by reviewing courts toward warrants will tend to discourage' this practice." United States v. Kidd, 407 F.2d 1316 (6 Cir. 1969); United States ex rel. Kislin v. New Jersey, supra.

Considering the affidavit in its entirety we hold that the information related by the informer substantiated by

3. While Draper involved a question of probable cause to arrest without a warrant, the analysis required is similar to that demanded of a magistrate when he considers whether a search warrant should issue. Spinelli v. United States, 393 U.S. at 417 n. 5, 89 S.Ct. 584.

the underlying circumstances of past reliability and the additional supporting information gathered from surveillance established probable cause for the issuance of the search warrant.

We are further of the opinion that the search was not invalidated by the method of entry utilized by the authorities. After Singleton was in the house for approximately ten minutes, detectives went to both the front and back doors. Detective Costanza, who had the warrant, knocked on the back door. Mosby and Singleton were both by the door, but there was no response to the first knock. At the second knock, Mosby parted the curtains and looked out at Costanza, who was standing on the porch. Mosby, who knew that Costanza was a State narcotics officer, then closed the curtains and told Singleton that the police were outside. There was then a commotion inside the house. The rear of the house was guarded by a storm door and a wooden door. In response to the commotion, Costanza, fearing that any narcotics on the premises would be destroyed, kicked at the storm door, breaking the glass. He was unable, however, to reach the door knob and open the door. At the sound of glass breaking, Detective Kendrick, who was stationed at the front door, forced open that door, and entered with federal agent Moore. Kendrick then opened the rear door for Costanza. Upon entering the house, agent Moore heard other glass break and proceeded towards the bedroom, where he observed Singleton attempting to break his way through a screen window. The glass of the window was already broken. He placed Singleton under arrest and brought him back into the kitchen, where Costanza had taken Mosby. The testimony unequivocally reveals that none of the detectives or federal agents announced, prior to entering the premises, that they had a warrant to search. However, as soon as Singleton was brought into the kitchen, Detective Costanza read the search warrant, and showed it to the two. He then told them that they could make any phone call they wished, could contact an attorney of their choosing, could have counsel appointed for them if they were destitute and that anything they said could be used against them.

The house was searched; eight glassine envelopes of heroin were recovered from the living room floor, and additional heroin was found in the toilet. In the basement, the agents found empty glassine envelopes, 65 packages of mannite, measuring spoons, silk stockings and a playing card, all of which are commonly used in the preparation of heroin for distribution.

 Appellant would have us invalidate the search and seizure because the agents failed to announce the purpose for which they desired entrance into the premises, prior to forcing open the door.[4] However, the announcement requirement is not without its exceptions. See Sabbath v. United States, 391 U.S. 585, 591, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); Ker v. California, 374 U.S. 23, 40, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Wong Sun v. United States, 371 U.S. 471, 482–484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Miller v. United States, 357 U.S. 301, 310, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). One such exception is the so-called "useless gesture" rule which has been applied where the arresting officers can be virtually certain that the person denying entrance knew their identity and purpose. See, e. g., Bosley v. United States, 426 F.2d 1257 (D.C. Cir. 1970); Wittner v. United States, 406 F.2d 1165 (5 Cir. 1969); Der Garabedian v. United States, 372 F.2d 697 (5 Cir. 1967); Chappell v. United States, 119 U.S.App.D.C. 356, 342 F.2d 935 (1965). Another is where there is a reasonable belief that evidence may be

---

4. 18 U.S.C. § 3109 provides:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

destroyed. Wong Sun v. United States, supra; Government of Virgin Islands v. Rijos, 285 F.Supp. 126 (D.C.V.I.1968).

■ Both of these exceptions come into play in this appeal. Detective Costanza knocked on the door. He was seen by Mosby who knew him to be a state narcotics officer. There was a refusal to open, followed by a shuffling of feet on the inside. Under these circumstances an announcement of purpose and authority would have been a useless gesture and may have enhanced the possibility of destruction of the contraband. The fact that Mosby knew Costanza's authority would give a reasonable person notice that the purpose of seeking entry was either to make an arrest or to search the premises. United States v. Freeman, 144 F.Supp. 669 (D.D.C.1956).

Approximately one week after the arrest and search, Mosby contacted agent Moore and arranged a meeting, which took place on October 11, 1967. He did so on his own accord because Singleton was attempting to put the whole blame on him and because Mosby felt he could do himself some good by cooperating with the authorities. He had not consulted an attorney, despite the fact that he had been advised of his right to do so on October 4.[5] At the outset, agent Moore again advised appellant of his constitutional rights.[6] Mosby proceeded to give a lengthy statement which detailed his involvement with Singleton, who was referred to as "Popeye." The

statement was not completed on the 11th. Rather, it was the product of several days discussion with the agents. Each of the five pages was signed or initialed and the last page recited that "this is a true statement made by myself and no threats or promises have been made to me in order to get me to sign this. I do it entirely voluntarily and of my own free will."

Appellant challenges the admissibility of the statement on the ground that he was never advised of his right under the Fourth Amendment to attack the validity of the search of his home. He contends that had he been advised of this legal right he would not have made the confession without first discussing it with counsel. In making this argument, appellant relies on United States v. Moderacki, 280 F.Supp. 633 (D.Del.1968) and United States v. Blalock, 255 F.Supp. 268 (E.D.Pa.1966). Such reliance is misplaced. Moderacki and Blalock involved the validity of a search incident to an arrest. The authorities relied on the consent of the respective suspects and the courts involved held that there could be no valid consent unless the suspects had been advised of their Fourth Amendment rights.[7]

■ That is a far cry from the situation here presented. Having fully told appellant of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it was not neces-

---

5. Appellant was released on bail on October 4, immediately after he was arraigned before a Justice of the Peace. Singleton had told appellant to consult with his attorney, but Mosby did not do so because he felt his interests conflicted with those of Singleton.

6. The statement given by Mosby indicates that he was advised of his right to remain silent, to consult an attorney before making any statement or answering any question, and the right to have an attorney present during questioning. There was no recitation that he was advised that counsel would be appointed for him if he could not, for financial reasons, retain his own. However, Agent Moore testified that he did advise Mosby of this right and De-

tective Costanza, who was present on October 11, corroborated that testimony. Mosby was not certain that the warning was not given. He merely did not recall being so advised.

7. See also United States v. Nikrasch, 367 F.2d 740 (7 Cir. 1966). The holding of Nikrasch was said to have been "of dubious propriety" in Byrd v. Lane, 398 F.2d 750, 755 (7 Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 625, 21 L.Ed.2d 564 (1969). Per se rules requiring specific warnings of Fourth Amendment rights, have been rejected in United States ex rel. Combs v. La Vallee, 417 F.2d 523 (2 Cir. 1969) and Gorman v. United States, 380 F.2d 158 (1 Cir. 1967).

sary for the authorities to further advise appellant of any possible defects in their activities before taking a statement.[8]

Lastly, we are of the opinion that the government proved its case against appellant beyond a reasonable doubt and that there was sufficient corroborative evidence to justify the admission of his statement. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); Moll v. United States, 413 F.2d 1233 (5 Cir. 1969).

For the reasons stated herein, the judgment of the district court will be affirmed.

ADAMS, Circuit Judge (concurring).

While the facts in this case present a close question regarding the propriety of the search warrant issued here, I concur in the result reached by the majority that the judgment should be affirmed.

Such conclusion is compelled by the reasoning in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the last Supreme Court case to examine the issue of what constitutes "probable cause" within the meaning of the Fourth Amendment. In *Spinelli*, the Court reaffirmed the technique employed by a federal agent in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) by which the agent verified "every facet of the information given him" by the informant, except the conclusion of the informant that criminal activity was then in progress. The Court found that with "every other bit" of the information personally verified, the agent had "reasonable grounds" to believe the conclusion was likewise true. Thus, in the absence of a revelation of the underlying circumstances upon which the informant based his conclusion here, that particular premises were

being used for the preparation of heroin for sale, the magistrate was enabled to test the conclusion by looking to whether other—albeit innocuous—detail supplied by the informant has been corroborated by the affiant. See *Spinelli*, supra, 393 U.S. at 415–416, 89 S.Ct. 584; compare The Supreme Court, 1968 Term, 83 Harv. L.Rev. 7, 177–181 (1969).

The present affidavit surely approaches the outer limits where probable cause may be found. The sole detail supplied by the informant to support his assertion that narcotics were being prepared at a certain address was that Robert Singleton would enter the premises at 8:00 a.m. and after 5:00 p.m. daily. This activity was verified by the police. Although—contrary to what the majority opinion states—the affidavit does not attribute to the informant any information about an automobile used by Singleton, even without this extra data the *Draper* test appears satisfied.

Regarding the trustworthiness of the informant, there is substantial authority that a recitation such as the informant "has furnished reliable information to the affiant in the past several years leading to and resulting in the arrest and convictions of numerous dealers in and users of narcotics in the County of Allegheny" is sufficient. See United States v. Mendoza, 433 F.2d 891 (5th Cir. 1970) (Wisdom, J.). In addition, the corroboration by the affiant of the details of Singleton's movements adds weight to the informant's credibility. *Spinelli*, supra, 393 U.S. at 417–418, 89 S.Ct. 584.

One matter not discussed by the majority opinion—and indeed not raised by the appellant—raises another hurdle to a finding of probable cause here. The Supreme Court has often stated that affidavits are to be "tested and interpreted * * * in a commonsense and realistic fashion." Ventresca v. United States, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). However, a limit-

---

8. In the light of our holding that the search was valid, it is not necessary to discuss appellant's contention that the statement was a "fruit of the poisonous tree" under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

ing concept of the "commonsense" approach is the requirement of specificity. An aspect of specificity relating to time is illustrated in Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966). There, federal agents obtained a warrant to search a barn outside of which an anonymous informant said he had smelled the strong odor of mash. The affiant did not specify when the informant detected the odor. The court found the use of the present tense in the language of the affidavit insufficient to indicate when the suspected activities were occurring:

"The present tense is suspended in the air, it has no point of reference. It speaks, after all, of the time when an anonymous informant conveyed information to the officer, which could have been a day, a week, or months before the date of the affidavit. To make a double inference, that the undated information speaks as of a date close to that of the affidavit and that therefore the undated observation made on the strength of such information must speak as of an even more recent date would be to open the door to the unsupervised issuance of search warrants on the basis of aging information." 356 F.2d at 316.

Contrary to the implication in the majority opinion here, the affidavit in the present case also fails to specify when the informant gave his information to the officer. However, the affiant does state that he observed Singleton on four occasions in "September and October of this year" enter the premises at the time of day indicated by the informant. Since the affidavit was dated October 2nd, only a single, rather than a double inference is required to establish the time about which the data supplied by the informant related. That inference is that the information given by the informant sometime in the past remains current because it has been very recently corroborated. While the date the information was given to the police, as well as the time of their confirmation of it, should preferably appear in the affidavit, I believe that the specification here was adequate to permit a magistrate to find that probable cause existed to issue a search warrant.

Under the circumstances related in the majority's opinion, which in turn reflects the stipulation of facts in this case, I do not believe the breaking of the door by the officers was improper.