UNITED STATES of America

v.

Richard Edward HENKEL, Appellant.

No. 19387.

United States Court of Appeals,
Third Circuit.

Argued Sept. 14, 1971.

Decided Nov. 23, 1971.

Adàms, Circuit Judge, filed concurring opinion.

See also 320 F.Supp. 1393.

David O'Hanesian, Forsyth, Fowkes & O'Hanesian, Pittsburgh, Pa., for appellant.

Blair A. Griffith, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before STALEY, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

Appellant Richard E. Henkel was tried and convicted of having violated 18 U.S. C. § 2113(a) and (d). The two-count indictment charged him with taking $80,-104 from a branch office of the Keystone National Bank of Pittsburgh in Duquesne Heights by use of force and violence, to wit, a handgun.

The evidence offered at trial by the Government can be briefly summarized. Bank employees testified that the hold-up took place on July 24, 1969, between 8:00 and 9:00 A.M., before the bank had opened. Two armed men wearing ski masks and black gloves, who had gained access to the bank prior to opening, robbed the bank. Five hundred dollars of the stolen money was "bait money", i. e., the serial number of each bill had been recorded for possible subsequent identification. The men used the bank manager's car to escape.

A short time later, two witnesses saw the bank manager's car being parked in an alley located 1.7 miles from the bank. These witnesses, Otto and Coulter, testified that they were in their place of employment which had a large window facing the street. A car was parked directly in front of the window. The witnesses testified that they saw two men run from the bank manager's car to the car parked in front of their window. Both men were wearing black gloves and one carried a black briefcase. Both witnesses clearly saw the man who entered the passenger side of the car which faced their window. They later identified appellant Henkel at a lineup and at the trial as the person who left the bank manager's car and entered the passenger's door of the other car.

On July 26, 1969, two days after the robbery, a man carrying a large black suitcase rented a safety deposit box at the Mars National Bank in Mars, Pennsylvania, about thirty miles from Pittsburgh. Bank personnel subsequently discovered that the name and address used in the application for the deposit box were both fictitious. The matter was reported to the FBI, which directed the bank to take a surveillance camera photo of the man on his next visit. This was done, and the FBI subsequently identified the Mars Bank depositor as Henkel.

Henkel had previously been indicted on July 18, 1969, for burglary of another bank, the Duncan Manor branch of the First State Savings and Loan Association. Certain proceeds of that burglary had not been recovered, including some cash, travelers' checks and savings bonds. FBI agents secured a search warrant on September 8, 1969, issued by a United States Commissioner, to search the Mars deposit box for proceeds of the Duncan Manor burglary. Upon searching the box, FBI agents found $20,000 cash. The agents testified that during their examination of the bills for some indication that any of them were from the Duncan Manor burglary, they discovered that serial numbers on 25 twenty dollar bills matched the bait money list of bills stolen from the Keystone Bank. The agents removed the $20,000 from the box.

The following day Henkel appeared at the Mars bank and was advised by bank personnel that the FBI had confiscated the contents of the deposit box. That same day an arrest warrant was issued for Henkel in connection with the Keystone Bank robbery. Henkel could not be found but was subsequently arrested on December 28, 1969, at a Pittsburgh area motel where he was registered under another assumed name.

At the trial the defense called a surprise witness, one Biagiarelli. This witness testified that it was he who had robbed the Keystone Bank together with one Larry Windsor and that he had given part of the money to Henkel to hold for him. He testified that he told Henkel that the money had been won in a dice game.

Appellant contends, *inter alia*, that the warrant to search the Mars Bank deposit box was not supported by probable cause, that the agents who searched the box had no right to compare a "bait list" from an unrelated crime to the money in the box, and that appellant's right to counsel and to due process were violated by the FBI agents having shown photographs including one of appellant to witnesses prior to his apprehension. Appellant also argues that the district court erred in allowing a witness to be cross examined with regard to his being under indictment for murder and in allowing certain testimony from another witness. Finally, appellant contends that the district court erred in refusing to charge the jury that appellant could be convicted of a lesser offense, that of receiving stolen goods.

■ With regard to the warrant secured by the FBI to search the Mars Bank deposit box, appellant contends that the warrant was improperly issued in that it was based on mere suspicion and speculation. He argues that the affidavit by the agent requesting the warrant is not supported by facts that would reveal probable cause for the belief that

the Duncan Manor burglary proceeds were in the box.

In his affidavit the FBI agent averred that Henkel was under indictment for the Duncan Manor burglary and that the proceeds of that crime had not been recovered. He further averred that Henkel had been identified by the use of a surveillance photograph as the man who had rented a safety deposit box in the Mars Bank using a fictitious name and address and that Henkel had carried a large black suitcase with him when he rented and subsequently visited the box. In addition, the agent stated that Henkel's home was approximately thirty miles from the Mars Bank and Henkel was not known to frequent the Mars, Pennsylvania, area.

The matter of probable cause to support a search warrant has been recently discussed by this court in United States v. Mosby, 439 F.2d 381 (C.A.3, 1971), and with regard to an arrest warrant in United States ex rel. Gockley v. Myers, 450 F.2d 232 (C.A.3, 1971). *Mosby* involved a warrant based on a tip from an informant, while *Gockley* dealt with a situation such as the instant case where an officer's personal knowledge was used to secure the warrant. Neither case can be viewed as controlling. The affidavit deemed defective in *Gockley* contained nothing more than the affiant's conclusory statement that the defendant had committed a crime. See also, Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). In *Mosby*, the informant's tip was substantiated by independent police surveillance. The affidavit in the instant case clearly avers facts that could support the independent judgment of the magistrate. The use of a false name and false address to secure a deposit box in a bank far from appellant's known home, coupled with the already established probable cause that ap-

pellant in fact had committed the burglary,[1] provides adequate support for the magistrate's judgment that there was probable cause to believe that the proceeds from the Duncan Manor burglary were in the box. See United States v. Scolnick, 392 F.2d 320 (C.A.3), cert. denied sub nom. Brooks v. United States, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968).

■ Appellant urges that even if we find that probable cause existed to support the warrant, the search itself exceeded the scope of the warrant. His contention is based on the undisputed fact that the cash taken from the Duncan Manor burglary was not traceable. He argues, therefore, that because there was nothing else in the box to indicate that the money had been stolen in that burglary, the search authorized by the warrant had ended. The action of the agents in comparing the bait list from an unrelated crime is characterized as a general search in violation of the Fourth Amendment.

■ The recurring controversy over the proper meaning and scope of that Amendment was the subject of a recent decision by the Supreme Court. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Court comprehensively discussed search and seizure under authority of a warrant as well as the plethora of exceptions to the warrant requirement. One such exception discussed by the Court is the "plain view" doctrine. This doctrine applies to the situation in which the police have a warrant to search a given area for specified objects and in the course of the search come across some other article of incriminating character.[2] The doctrine serves to supplement the prior justification and permits the warrantless seizure. Given the initial

1. Probable cause that Henkel had committed the burglary is supplied by the grand jury having returned the indictment.

2. Cf. Stanley v. Georgia, 394 U.S. 557, 571, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969);

United States v. Lefkowitz, 285 U.S. 452, 465, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Go-Bart Importing Co. v. United States, 282 U.S. 344, 358, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Steele v. United States No. 1, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925).

intrusion, the seizure of an object in plain view is consistent with the Fourth Amendment prohibitions since it does not convert the search into a general one.[3] As the Court stated in *Coolidge:*

> "As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it." 403 U.S. at 467–468, 91 S.Ct. at 2039.

We find the Court's statements in *Coolidge* to be applicable to the instant case. The warrant authorized a search of the box, and the agents did not exceed that area. One of the things specified by the warrant was cash, and cash was found. The agents were required to examine each bill to determine if there was anything that would indicate that it had been stolen from the Duncan Manor bank. Appellant's argument seems to turn on the use of the bait list. The use of the list is seen as a second and unauthorized search of the identical piece of currency. We cannot agree. Had the serial numbers been memorized by the agent, he would immediately have recognized the money as evidence of another crime in plain view. The mere fact that the numbers were recorded on a piece of paper in his pocket rather than on his memory does not control the validity of the search.[4] We hold that appellant's Fourth Amendment rights were not violated by the seizure of the contents of the deposit box.

◼ Appellant next contends that his right to counsel was violated by the FBI agents' use of photographs to secure an identification of him by the witnesses, Otto and Coulter. He argues that the release of his name to the Pittsburgh newspapers was the culminating event in the FBI's investigation and that event,

3. The Court pointed out in Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), that rationale for the plain view doctrine is grounded on two distinct protections afforded a citizen by the Fourth Amendment. First, the magistrate's scrutiny is intended to eliminate all searches not based on probable cause. Secondly, those searches deemed necessary should be as limited as possible. Here, the specific evil is the general search. Under the plain view doctrine, both protections are met. The initial intrusion is a valid one, and since the object is in plain view, the search remains limited.

4. Despite the sometimes technical nature of its search and seizure rulings, the Supreme Court has consistently recognized certain common sense practicalities inherent in the nature of the problem. As pointed out in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Court has always recognized a distinction between searches that take place on a man's property, such as his home or office, and those that take place elsewhere. 403 U.S. at 474, 91 S.Ct. 2022. The decisions upon which appellant relies, Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927) ; Stanford v. State of Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) ; and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), all deal with searches of a home or premises that went beyond the objects specified by the warrant or beyond the area incident to an arrest. Appellant would have us hold that when police are searching a safety deposit box rented under a false name in a bank far from the suspect's home, they may examine the contents of the box minutely but their thoughts must be concerned solely with the crime that gave rise to the warrant. Under this analysis, if the agent while holding a twenty dollar bill in his hand and examining it for a teller's mark, then switches his frame of reference to that of another robbery, he has abandoned the initial search and has embarked upon a second and unauthorized search of that same twenty dollar bill in violation of the Fourth Amendment rights of the possessor of the bill. We, however, have never understood the principles of limited search to require such rigid controls on the thoughts of law enforcement officials engaged in a criminal investigation.

together with the resulting publicity, established him as a suspect within the meaning and spirit of our decision in United States v. Zeiler, 427 F.2d 1305 (C.A.3, 1970). Appellant claims that the only purpose for the FBI's actions was to fix his identity in the minds of the witnesses. We do not agree. Appellant had taken flight and was not under arrest or in custody at the time the FBI agents showed a spread of photographs, including one of him, to the witnesses. The investigation of the crime was in progress. The use of photographs as an investigative technique has been approved by the Supreme Court. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). We see no basis for requiring the police to secure counsel for an unapprehended suspect prior to his arrest so that counsel may have the opportunity to participate in the police investigation.

We have carefully considered each of the other arguments advanced by appellant but find them to be without merit.

The judgment of the district court will be affirmed.

ADAMS, Circuit Judge (concurring).

Although I agree with the result reached by the majority, the continuing and vital importance of Fourth Amendment cases to effective law enforcement impels me to set forth a separate and detailed exposition of my views on one aspect of this critical subject—the sufficiency of affidavits in support of search warrants.

The precise issue confronting us in this case is whether the affidavit in support of the search warrant was sufficient to engender in a reasonable, prudent man the belief that stolen property probably was secreted in the safe deposit box described in the warrant. The affidavit alleged that Henkel had been indicted for a crime by a grand jury, that Henkel had exhibited bizarre behavior with respect to a certain safe deposit box, and that a search of Henkel's home and automobile

had failed to uncover the proceeds of the crime for which he had been charged.

Clearly, the first allegation—that Richard Edward Henkel was indicted for the burglary of a bank—provided adequate justification for the Commissioner's belief that Henkel probably did commit the alleged crime. And the third allegation —that the proceeds of the burglary were not found in Henkel's house or car when they were searched by the FBI—is sufficient to establish the reasonable belief that the proceeds of the burglary were probably hidden elsewhere. The remaining question, then, is whether the allegations concerning Henkel's behavior were sufficient to support a reasonable belief that the stolen property probably was concealed in the safe deposit box, thus providing the missing link for the establishment of probable cause to search the box.

The affiant alleged that approximately six months after the burglary Henkel applied for a safe deposit box in the Mars National Bank located some thirty miles from his home. Although the affidavit recited that the applicant for the box stated his name was Richard Edward, the affiant asserted he knew Richard Edward was in fact Richard Edward Henkel because he compared photographs of Richard Edward taken at the Mars Bank with FBI photographs of Richard Edward Henkel, and because specified officers of the Mars Bank positively identified FBI photographs of Henkel as Richard Edward. The affiant further averred that Henkel carried a large black suitcase when he applied for the box and when he subsequently visited the bank. Finally, the affiant stated that Henkel had not previously done business at the Mars Bank and was not known to frequent the vicinity of that bank.

Under the Fourth Amendment, "before a warrant for either arrest or search can issue [Supreme Court decisions] require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause ex-

ists for the warrant." Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 564, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971) (footnote omitted); *accord,* United States v. Singleton (Mosby), 439 F.2d 381 (3rd Cir. 1971); United States ex rel. Kislin v. New Jersey, 429 F.2d 950, 952 (3rd Cir. 1970). The Supreme Court has admonished that affidavits are to be "tested and interpreted * * * in a commonsense and realistic fashion." Ventresca v. United States, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *accord,* United States v. Singleton, *supra,* 439 F.2d at 387 (Adams, J., concurring). I am satisfied that the affidavit in this case, when viewed in a "common sense and realistic fashion", conveys "sufficient information to support an independent judgment that probable cause exists for the warrant."

Our recent case of United States ex rel. Gockley v. Myers, 450 F.2d 232 (3rd Cir. 1971), is not to the contrary. The issue in that case was whether independent of the invalid arrest warrant, the police officers who arrested Gockley had probable cause to believe that he had committed the crime of forgery. Although I dissented, this Court there held that where the police had manifested their doubt as to Gockley's guilt by sending the allegedly forged documents to the FBI for handwriting analysis and that where Gockley's conduct otherwise was merely suspicious, probable cause for arrest did not exist. Implicit in the Court's decision was the thought that the forgery arrest was an artifice used by the police to gain custody of Gockley so that he could be questioned closely about certain missing persons. No such factors are present here, and the cases clearly are not analogous.

This being so, I agree with the majority that the allegations concerning Henkel's behavior provide the necessary nexus and thereby justify the issuance of the warrant to search the safe deposit box. Accordingly, it is appropriate that the judgment of the district court be affirmed.