**UNITED STATES of America ex rel. Joseph Michael DUNHAM, Petitioner,**

v.

**Lawrence M. QUINLAN, Sheriff, Dutchess County, Respondent.**

**No. 70 Civ. 3685.**

United States District Court, S. D. New York.

May 26, 1971.

Joseph Michael Dunham, pro se.

James V. Brands, Asst. Dist. Atty., Dutchess County, Poughkeepsie, N. Y., for respondent.

## OPINION

### EDELSTEIN, District Judge.

Joseph Michael Dunham, the petitioner, was convicted after a jury trial in the County Court of New York, Dutchess County, of robbery in the first degree, burglary in the second degree, and possession of a dangerous weapon. Petitioner now is in prison serving the concurrent sentences imposed by the County Court for these crimes.[1] His petition for a writ of habeas corpus is founded on the claim that his apartment was searched unlawfully without a warrant in violation of the Fourth Amendment and that evidence seized during this search, a gun, was admitted into evidence against him at his trial. At the outset, the issue raised by this petition, however, is whether or not the petitioner has exhausted his state remedies with respect to this federal constitutional claim.

The parties disagree on this issue. Respondent alleges that petitioner has not exhausted his state remedies, whereas petitioner alleges that he had raised his search and seizure claim on direct appeal in the state courts. To find the facts in connection with this dispute the court undertook to obtain the state court records relating to petitioner's case. It was discovered that the records were with the Appellate Division of the New York Supreme Court for the Second Judicial Department in connection with an appeal pending before that court. The records were furnished directly to this court by the Clerk of the Appellate Division shortly after the Appellate Division rendered its decision on that appeal.

The records obtained from the Appellate Division included all of the records on file with the office of the Dutchess County Clerk and with the Appellate Division, the transcript of petitioner's trial in the Dutchess County Court, the transcript of a suppression hearing held in the Dutchess County Court, and the briefs filed in connection with petitioner's direct appeal and in connection with his appeal from the Dutchess County Court's denial of a petition for a writ of error coram nobis. These materials reveal the following:

On October 22, 1968, Judge Jiudice of the Dutchess County Court, upon the application of the petitioner, ordered the prosecution to show cause why an order should not be entered suppressing as evidence against the petitioner various items allegedly seized as a result of an illegal search and seizure. This matter came on for a hearing in the County Court on October 23, 1968, and a full hearing then was held in connection with the alleged unlawful search and seizure and also in connection with confessions made by petitioner which he also moved to suppress. At the conclusion of the hearing Judge Jiudice made findings of fact and conclusions of law denying petitioner's motion to suppress in all respects. Petitioner's trial commenced the next day and ended in his conviction on October

1. Petitioner was sentenced as follows: (1) he was given indeterminate sentences of from eight and one-third years to twenty-five years on each of two counts of robbery in the first degree; (2) he was given indeterminate sentences of from five years to fifteen years on each of two counts of burglary in the second degree; and (3) he was given an indeterminate sentence of from two and one-third years to seven years for unlawful possession of weapons, dangerous instruments and appliances. All sentences were to run concurrently.

30, 1968, on five of the seven counts charged in the indictment. Petitioner was sentenced on January 21, 1969. Thereafter, on February 17, 1969, petitioner and his assigned trial counsel filed separate notices of appeal from the judgment of conviction. The appeal itself was prosecuted by an attorney assigned by the Appellate Division, Second Department. On April 27, 1970, the Appellate Division unanimously affirmed petitioner's conviction without filing an opinion. People v. Dunham, 34 A.D.2d 735, 311 N.Y.S.2d 276 (2d Dept.1970). Subsequently, on June 12, 1970, petitioner's *pro se* application for leave to appeal to the Court of Appeals was denied by the Appellate Division.

While this appeal from his conviction still was pending, petitioner made various *pro se* applications to the County Court. He made several motions for a new trial based on newly discovered evidence. All of these motions were denied. Petitioner filed a notice of appeal dated January 6, 1970, from one of these denials, but this appeal apparently was not prosecuted. A petition for a writ of error coram nobis also was directed to the County Court. This was denied on September 19, 1969, and petitioner filed a notice of appeal from this decision. This appeal also apparently was not pressed. Finally petitioner made several applications to the County Court asking that he be provided free of charge with a copy of the records of his case. These applications also were unsuccessful. One motion for a copy of the judgment roll was denied by the County Court on March 19, 1970. Petitioner filed a notice of appeal from this decision too, but once again, apparently, did not pursue his appeal. Although his attempts to obtain a copy of his records failed, petitioner was permitted by the Appellate Division to prosecute his appeal from his conviction on the original papers and by typewritten briefs, and his assigned counsel was provided with the necessary records without charge.

None of the *pro se* applications made by petitioner to the County Court while the appeal from his conviction was pending raised the issue of the legality of the search and seizure complained of here. Nor was the issue raised in the brief submitted by petitioner's counsel to the Appellate Division. That brief only raised issues concerning the propriety of the remarks made by the prosecutor to the jury in his opening and closing statements at the trial.

Petitioner's claim that he has exhausted his state remedies rests on the allegation that he raised the search and seizure question in a *pro se* supplemental brief dated December 24, 1969, filed with the Appellate Division in support of the appeal from his conviction. This brief was not on file in the Appellate Division with the other briefs submitted in connection with this appeal. This court did find attached to the briefs in the Appellate Division's file an affidavit dated September 30, 1969, submitted by the petitioner. This affidavit related facts pertaining to petitioner's case, but it did not make the claim that the petitioner had been the subject of an unlawful search and seizure.

It was noted previously that petitioner had applied *pro se* to the Appellate Division after its affirmance of his conviction for leave to appeal to the Court of Appeals. A copy of the December 24, 1969, *pro se* supplemental brief relied upon here by the petitioner as the basis for his claim of exhaustion is attached to this Appellate Division application as an exhibit. The *pro se* supplemental brief does raise *inter alia* the search and seizure issue. This particular copy of the brief, though, could not have been before the Appellate Division when it was considering petitioner's appeal because this copy is attached as an exhibit to an application made after the Appellate Division affirmed his conviction on April 27, 1970. The question, then, is whether any copy of the supplemental brief had been before the Court when it was considering petitioner's appeal. The Appellate Division's file gives no indication that such was the case.

Other exhibits attached to petitioner's application for leave to appeal to the Court of Appeals possibly suggest an affirmative answer. First, there is a letter dated January 9, 1970, from the Clerk of the Appellate Division to petitioner acknowledging receipt of his supplemental brief but stating that it was necessary for the petitioner to serve a copy of the brief on the District Attorney of Dutchess County and another copy on his assigned counsel before the brief would be submitted to the Court. Second, there is a letter dated March 24, 1970, and marked received by the Appellate Division on March 30, 1970, from the petitioner to the Clerk. In this letter petitioner states that he had sent a copy of his supplemental brief to the District Attorney on the same day he had mailed the brief to the Court. Finally, there is a letter dated December 29, 1969, from petitioner to his assigned counsel advising the latter that petitioner had filed a supplemental brief with the Appellate Division.

However, these exhibits may prove too much when they are viewed in light of the substance of the application for leave to appeal to the Court of Appeals to which they are appended. Much of this application focuses on the petitioner's submission of the supplemental brief. Petitioner suggests that without a consideration of the issues raised by this brief he could not be given a "full and complete appeal." Indeed, the thrust of his argument that he should be given leave to appeal to the Court of Appeals is that further review is necessary because the important issues raised by his supplemental brief had not been considered by the Appellate Division. Implicit in this argument is that petitioner's supplemental brief had not been presented to the Appellate Division. And, in fact, as stated previously, this court failed to find the supplemental brief in the file with the other briefs submitted to the Appellate Division.

Some months after the determination of his appeal from his conviction, on August 11, 1970, petitioner again applied to the Dutchess County Court for a writ of error coram nobis setting aside his conviction. Petitioner was represented by counsel in this matter. Among the grounds urged in support of this application was the illegality of the search of petitioner's apartment. In a reply affidavit filed by petitioner himself on September 15, 1970, in support of this coram nobis application, petitioner stated, when referring to his direct appeal from his conviction, that "Although the Appellate Division did rule upon the original trial of your deponent, it did not have before it the questions of the Huntley hearing, the *suppression*, [and] the alleged confessions. \* \* \*" (emphasis added) This sworn admission is further evidence that petitioner had failed to present to the Appellate Division on his direct appeal the issue he attempts now to raise in this forum.

Before leaving this review of the state court records, however, further attention must be directed to petitioner's August 11, 1970, coram nobis application. Though not relied upon by petitioner as support for his claim of exhaustion, this application raised, among other issues, the lawfulness of the search of petitioner's apartment and the seizure of the gun. This application was pending before the County Court when this petition for a writ of habeas corpus was filed in this court. Since then, on October 15, 1970, the County Court denied the application without a hearing, saying as to the search and seizure issue that since the suppression hearing was a part of the record the issue must be determined on appeal and not on a coram nobis application. This decision was affirmed by the Appellate Division, Second Department, on April 19, 1971, without an opinion. There is no evidence that petitioner has applied for leave to appeal this decision to the Court of Appeals.

Petitioner was represented on this coram nobis application before the Appellate Division by assigned counsel. The lone issue raised in the briefs on appeal was the propriety of the County

Court's denial of the coram nobis application without first having granted a hearing. In fact, the issue presented by petitioner's brief was even narrower since it argued only that the presentation made to the County Court had been sufficient to warrant a hearing on whether admissions made by petitioner had been induced improperly. No mention was made in the brief of the search and seizure issue.

■■ A federal court may not grant a writ of habeas corpus to a person in custody pursuant to the judgment of a state court unless the petitioner first provides the state courts an opportunity to correct his claimed violation of federal constitutional right. 28 U.S.C. § 2254(b), (c) (1964) as amended (Supp. V, 1970). This exhaustion rule not only requires that a state prisoner first seek redress in the state courts, but it also requires that he first directly and fairly present to the state courts the same constitutional issue which he raises in the federal forum. United States ex rel. Santiago v. Follette, 298 F.Supp. 973 (S.D.N.Y.1969); United States ex rel. Rigwood v. Mancusi, 289 F.Supp. 849 (S.D.N.Y.1968); United States ex rel. McDonald v. Deegan, 284 F.Supp. 166 (S.D.N.Y.1968). Also, in order to exhaust his state remedies, the petitioner must first exhaust all of the state appellate remedies that are available to him before applying to the federal courts for relief. United States ex rel. Griffin v. Martin, 409 F.2d 1300 (2d Cir. 1969); Martinez v. Craven, 397 F.2d 256 (9th Cir. 1968); United States ex rel. Jiggetts v. Follette, 260 F.Supp. 301 (S.D. N.Y.1966); United States ex rel. Hussey v. Fay, 220 F.Supp. 562 (S.D.N.Y. 1963).

■ This court has examined carefully the state court records pertaining to petitioner's conviction and to the various post-conviction applications and appeals made by him. The court concludes that at the time the petition for a writ of habeas corpus was filed the petitioner had not fully and fairly exhausted the state remedies available to him in connection with his claim that his apartment was searched unlawfully. This court is not persuaded that the Appellate Division was presented with this issue when it had before it petitioner's direct appeal from his conviction. Petitioner's most recent application for a writ of error coram nobis did raise the issue of an unlawful search. However, this application was pending before the County Court when this petition was filed, and even now, although the Appellate Division has affirmed the County Court's denial of the application, there is no evidence that petitioner has sought leave to appeal to the Court of Appeals. United States ex rel. Griffin v. Martin, *supra.* Furthermore, the search and seizure issue itself actually was not presented to the Appellate Division on the appeal from the County Court's denial of the coram nobis application. The petition for a writ of habeas corpus must be dismissed because petitioner has not exhausted his state remedies.

The exhaustion issue aside, an examination of petitioner's claim reveals that the petition is without merit.

Petitioner was arrested at his place of employment on June 14, 1968, pursuant to an arrest warrant issued in connection with a charge unrelated to the Dutchess County conviction under attack here.[2] Petitioner alleges that at the time of his arrest and while he was held at gunpoint, the arresting officers searched his automobile and found the key to his apartment under the left-hand floor mat of the automobile. Petitioner

---

2. At the time of his arrest petitioner was employed by the Miron Lumber Company. The arrest was made in connection with a charge of grand larceny involving thefts from the lumber company. Petitioner subsequently pleaded guilty to a reduced charge of petty larceny and was sentenced to imprisonment for nine months. The conviction under attack here involved the armed robbery of one Valentino Sammarco.

alleges further that without his knowledge or consent and without a search warrant the officers used the key to enter his apartment. His apartment was searched and the gun later used as evidence against him was seized. According to petitioner he learned for the first time that his apartment had been searched only when he was confronted at the Dutchess County Sheriff's Office with the gun and other items seized from his apartment.

A different version of the facts emerged from the testimony given at the pre-trial suppression hearing held by the County Court. The officer in charge of arresting petitioner, Deputy Sheriff Borchers, testified that after petitioner was arrested he was taken to the Dutchess County Sheriff's Office where Sheriff Borchers advised him of his constitutional rights. Petitioner stated that he did not want an attorney and that he was willing to talk to Sheriff Borchers without the presence of an attorney. What occurred then was testified to by Sheriff Borchers as follows:

"A. Thereafter, he and I had a conversation at which time I said to him, 'Joe, I understand you have been carrying a gun around,' and he stated to me, 'You did not get me with any gun,' and I said, 'Well, possibly the gun is at your apartment.' He stated, 'No, I got no gun at my apartment.' At which time I said, 'Well, if you have no gun there, would you have any objection if we go over and search your apartment?'

Q. What did he say?

A. He said, 'I have nothing to hide. I have no guns, no weapons of any type. Here is the key. Go over and check my apartment.'

Q. What else did you say to him at that point?

A. At that point after he gave us the key, we went over to the apartment; myself, Detective Traver, Detective Berberich and Lieutenant Hellmann.

In the dresser in the apartment we found a revolver."

Only two other witnesses were called to testify at the suppression hearing. Albert Traver, a detective sergeant in the Dutchess County Sheriff's Office, was called by the prosecutor. He testified primarily to various admissions made by petitioner and to the circumstances surrounding the making of these admissions; he did not testify as to the facts surrounding petitioner's alleged consent to the search of his apartment. Petitioner called David Effron, an attorney who had represented him in connection with the unrelated charge for which he had been arrested on June 14, 1968. Mr. Effron testified only that petitioner had pleaded guilty in the unrelated case to a reduced charge of petty larceny.

Judge Jiudice of the County Court found that petitioner had been taken to the Sheriff's Office after his arrest by Sheriff Borchers. Petitioner was interrogated there. At the end of some discussion, petitioner turned over his apartment key to Sheriff Borchers and granted him permission to search his apartment.

■■ A federal district court must apply federal constitutional law when considering a petition by a state prisoner for a writ of habeas corpus. However, where a state court has afforded a full and fair hearing to the petitioner on his federal constitutional claim, and where the state court has made reliable findings of fact, the federal district court may and ordinarily should accept the facts as found by the state court. 28 U.S.C. § 2254(d) (1964), as amended (Supp. V, 1970); Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Fein v. Deegan, 410 F.2d 13, 17 (2d Cir.), cert. denied 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969).

■ This petition does not present a basis for ordering a new evidentiary hearing. The precise issue of the law-

fulness of the search of petitioner's apartment was heard fully and resolved on the merits by the County Court. The hearing was conducted in a fair manner. The record demonstrates that petitioner's assigned counsel was afforded every opportunity to examine each witness thoroughly and to elicit all facts deemed material and relevant to the issue before the Court. The findings made by the County Court are fully supported by the record. Petitioner asserts that Sheriff Borchers' testimony should not have been believed, but this bald assertion gives no warrant for a new evidentiary hearing in this court. United States ex rel. Alberti v. Follette, 269 F.Supp. 7, 9 (S.D.N.Y.1967).

Petitioner makes three allegations suggesting that the hearing in the County Court was not fair and adequate. All three are insubstantial.

■ First, petitioner pleaded guilty to petty larceny in connection with the unrelated charge he was arrested for on June 14, 1968. This plea, petitioner alleges, was made pursuant to an agreement with the prosecutor and the court that the plea would be accepted in satisfaction of all charges against him. Petitioner asserts that Mr. Effron, the attorney who represented him on the guilty plea, was not permitted by the County Court to testify at the suppression hearing about this "deal." However, the transcript of the hearing does not lend any credence to this charge. It does not show that any objections were made to Mr. Effron's testimony, nor does it show that the Court placed any restrictions on his testimony. Moreover, it would be of no consequence even if Mr. Effron's testimony had been limited in the manner asserted by petitioner. Testimony about the alleged agreement was neither material nor relevant to the

issue of the lawfulness of the search inasmuch as the agreement, by petitioner's own account, was made after his apartment had been searched.

■ Second, petitioner alleges that he was not allowed to call three unnamed witnesses. Petitioner neither identifies these witnesses nor relates what their testimony would have been if they had been called. The court notes, though, that petitioner raised the defense of alibi at his trial, claiming that on the night in question he had been to see a movie at a drive-in theater. In his petition for a writ of error coram nobis denied by the County Court on October 15, 1970, petitioner claimed that only two of the persons who could have corroborated his alibi were called to testify at the trial. Assuming that the witnesses petitioner is referring to here are the remaining alibi witnesses, their testimony in any event would not have been relevant to the question of whether petitioner had consented to the search of his apartment.

■ Third, petitioner alleges that his assigned trial counsel had not conferred with him prior to the suppression hearing and that the failure to call witnesses as alleged was the result. Inasmuch as this alleged failure to call witnesses was not prejudicial, even if this third allegation is correct, petitioner has not shown that this lack of prior consultation had any effect upon the adequacy of the hearing. *Cf.* United States ex rel. Jefferson v. Follette, 396 F.2d 862 (2d Cir. 1968).

■ In sum, the court finds that the suppression hearing held in the County Court was a full and fair hearing at which petitioner had every opportunity to develop adequately all of the facts material to the issue of the lawfulness of the search of his apartment.[3] The is-

---

3. In making his findings of fact and conclusions of law at the conclusion of the suppression hearing, Judge Jiudice stated as to the suppression of the gun that the ultimate burden of proof by a preponderance of the evidence rested on the petitioner. Although Judge Jiudice misspoke himself on the standard of the burden of proof, nonetheless, a new evidentiary hearing is not justified. The transcript of the suppression hearing reveals that the state adduced clear and

sue that remains now is whether Judge Jiudice was correct in finding that petitioner consented to the search of his apartment. The answer must be in the affirmative.

■ The State had the burden of proving by clear and convincing evidence that petitioner freely and voluntarily consented to the search. The State also had to show that the consent was specific and unequivocal and not the product of coercion or duress, actual or implicit. *E. g.*, Bumper v. North Carolina, 391 U. S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); United States v. Thompson, 356 F.2d 216, 220–221 (2d Cir. 1965), cert. denied 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966). This burden was met.

■ Sheriff Borchers' uncontradicted testimony shows that petitioner was taken to the Sheriff's Office after his arrest. There, after being advised of his constitutional rights and after some further conversation, petitioner gave the key to his apartment to Sheriff Borchers and said "Go over and check my apartment." Petitioner was not coerced into giving his consent to the search of his apartment. No force was used upon him nor was the use of force threatened. No other kind of threat was made against him. Sheriff Borchers requested permission to search the apartment; he did not instruct petition-

er to grant him such permission. Petitioner's consent was given very shortly after Sheriff Borchers began his interview, not after a prolonged period of interrogation. Petitioner was not tricked into giving his consent. To be sure, petitioner was in custody at the time, but the fact that an individual is under arrest does not of itself render involuntary words of consent. United States ex rel. Lundergan v. McMann, 417 F.2d 519, 521 (2d Cir. 1969); United States v. Jordan, 399 F.2d 610 (2d Cir.), cert. denied 393 U.S. 1005, 89 S.Ct. 496, 21 L. Ed.2d 469 (1968); United States v. Adelman, 107 F.2d 497 (2d Cir. 1939). Finally, that petitioner's consent to the search of his apartment led to the discovery of evidence against him also does not of itself render his consent ineffectual.[4] United States ex rel. Lundergan v. McMann, *supra*; United States v. Curiale, 414 F.2d 744, 747 (2d Cir.), cert. denied 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969); United States v. Gorman, 355 F.2d 151, 158–159 (2d Cir. 1965), cert. denied 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966). *But see*, Channel v. United States, 285 F.2d 217 (9th Cir. 1962); Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951).

The petition for a writ of habeas corpus is dismissed.

So ordered.

---

convincing evidence in support of its contention that the petitioner had voluntarily consented to the search of his apartment. While petitioner was not required to go forward, of course he was afforded the opportunity to present evidence in his own behalf. He did not adduce any countervailing evidence. Accordingly, Judge Jiudice had no need to resolve conflicting evidence in arriving at his findings of fact.

4. In this connection it may be noted that at his trial petitioner testified that he did not know the gun was at his apartment and that it belonged to a friend of his named Bill Bratfield who used his apartment on occasion. If this testimony is true then petitioner would have had little reason to fear a search of his apartment or withhold his consent. Indeed, he may have calculated that his apparent cooperation might prove beneficial to him.